# Exhibit B

### GERICKE v SACK 1978 (1) SA 821 (A)

1978 (1) SA p821

| | |
|---|---|
| Citation | 1978 (1) SA 821 (A) |
| Court | Appellate Division |
| Judge | Rumpff CJ, Jansen JA, Diemont JA, Trengove AJA and Klopper AJA |
| Heard | September 9, 1977 |
| Judgment | November 22, 1977 |
| Annotations | Link to Case Annotations |

### Flynote : Sleutelwoorde

Prescription - Extinctive prescription - Claim based on delict - Begins to run only from when creditor has knowledge or is deemed to have knowledge, of identity of debtor and of the facts out of which the claim arises - Onus on debtor claiming prescription to allege and prove such knowledge, or deemed knowledge - Act 68 of 1969, sec. 12 (3).

Prescription - Extinctive prescription - When prescription begins to run - "Identity of debtor" in sec. 12 (3) of Act 68 of 1969 - Meaning of - Should be sufficient information for process-server to be able to identify the debtor by name and address.

Practice - Trial - Onus of proof - One party having peculiar or intimate knowledge or means of knowledge of a fact - That does not alter onus of proof - Merely means that, if onus on other party, he is required to provide less evidence to establish a prima facie case.

### Headnote : Kopnota

Section 12 (3) of the Prescription Act, 68 of 1969, specifically provides, in respect of a debt which does not arise from contract, that prescription begins to run only when the debt becomes due to that it is not deemed to become due until the creditor has knowledge both of the identity of the debtor and of the facts from which the debt arises. If follows that if the debtor is to succeed in proving the date on which prescription begins to run he must allege and prove that the creditor had the requisite knowledge on that date.

In order to determine the meaning which the Legislature intended to give to the words "identity of the debtor" in section 12 (3) of the Prescription Act, 68 of 1969, they should be read in the context in which they are used in the Act. In order to establish such identity, regard will have to be had to the particular circumstances of each case, but for practical purposes there should be sufficient information for the process-server to be able to identify the debtor by name and address.

It is not a principle of our law that the *onus* of proof of a fact lies on the party who had peculiar or intimate knowledge or means of knowledge of that fact. The incidence of the burden of proof cannot be altered merely because the facts happen to be within the knowledge of the other

Copyright Juta & Company

party. However the Courts take cognizance of the handicap under which a litigant may labour where facts are within the exclusive knowledge of his opponent and they have in consequence held that "less evidence will suffice to establish a *prima facie* case where the matter is peculiarly within the knowledge of the opposite party than would under other circumstances be required" (*Union Government (Minister of Railways)* v *Sykes*, 1913 AD 156 at p. 173). But the fact that less evidence may suffice does not alter the *onus*.

On 13 February 1971 a motor boat had crashed into a jetty and injured the appellant. On 14 February 1974 a summons was served on the respondent claiming damages for the injuries which the appellant had sustained. The respondent field a plea on the merits denying liability and a special plea contending that the appellant's claim had become prescribed on 13 February 1974. At a pre-trial conference the parties agreed that, in the event of the special plea not being upheld, judgment should be given in favour of appellant for an agreed amount. Accordingly the only issue the trial Court had to decide was whether the claim had become prescribed. The trial Court held that the *onus* to prove the special plea was on the respondent, with no exceptions, and, after hearing evidence, upheld the special plea and dismissed the claim with costs. In an appeal,

1978 (1) SA p822

*Held*, that the *onus* was on the respondent to show on the evidence when appellant learned or was deemed to have learned of the respondent's identity.

*Held*, further, even though the *onus* on the respondent was a light one, that he had failed, on the evidence, to prove that the appellant had knowledge of his identity on 13 or 14 February 1971.

*Held*, further, however, that the Court *a quo* had rightly concluded that the appellant had to be held to have had knowledge of respondent's identity by virtue of the operation of the deeming provision in section 12 (3) of the Act; for she had known that the injurer had been the pilot of a particular boat, and the evidence showed that all she had had to do on those dates was to ask one question to establish the identity of the respondent instead of leaving everything to her husband and paying a purely passive role.

The decision in the Transvaal provincial Division in *Gericke and Another v Sack*, confirmed.

Case Information

Appeal from a decision in the Transvaal provincial Division (HIEMSTRA, A.J.P.). The facts appear from the judgment of DIEMONT, J.A.

B. van den Heever, for the appellant: *Holmes v Salzmann*, 1913 O.P.A. 111, en *Yusaf v Bailey*, 1964 (4) SA 117, is onderskeibaar vanweë die verskille wat bestaan tussen art. 5 van Wet 18 van 1943 en art. 12 van Wet 68 van 1969. (Sien in die verband *Apalamah v Santam Ins. Co. Ltd. and Another*, 1975 (2) SA op bl. 232. Alternatiewelik is die twee sake verkeerd beslis. *Reid v Van der Walt*, (1856) 2 Searle 285, en *De Szabo v Swart, N.O.*, 1951 (3) SA 378, is korrek. Die repliek van die appellante kom neer op 'n ontkenning van die bewerings gemaak in die spesiale pleit, nl. dat die "eis" opeisbaar geword het op 13 Februarie en derhalwe verjaar het na

Copyright Juta & Company

verstryking van 'n periode van drie jaar, en dat die respondent die bewyslas dra volgens die relevante beginsels van toepassing in hierdie verband. *Pillay v Krishna*, 1946 A.A. 946; *Dave v Birrel*, 1936 T.P.A. 192. Die feit dat een party besondere kennis dra beïnvloed nie die ligging van die bewyslas nie. *Goosen v Stevenson*, 1931 T.P.A. 223; *Union Government v Sykes*, 1913 A.A. 256. Die Hof *a quo* het bevind dat die respondent hom van hierdie bewyslas gekwyt het en dat die eis derhalwe verhaar het. Die Hof het fouteer met hierdie bevinding. Die getuienis oor wanneer die appellant se eggenote die respondent se identiteit vasgestel het, is dus direk teenstrydig, en die aanvaarding van die getuienis dat dit reeds op 13 of 14 Februarie geskied het, sal slegs geoorloof wees as die getuienis van die appellante se eggenote as vals verwerp kan word. *National Employers Mutual General Insurance Association v Gany*, 1931 A.A. 187; *Koster Koöperatiewe Landbou Maatskappy Bpk. v S.A.S. & H.*, 1974 (4) SA 420. Die Hof *a quo* het ook geen geloofwaardigheidsbevinding gemaak nie en die Hof was foutief in hierdie benadering. Sien *R. v De Klerk*, 1958 (2) SA 588; *S. v Guess*, 1976 (4) SA te bl. 718. Selfs al sou die Hof bevind dat die appellante se eggenoot bewus was van die identitiet van die respondent, of geag word bewus te gewees het, beantwoord dit nog nie die vraag of die appellante self kennis gedra het of geag moet word kennis te hedra het nie. Die vraag of appellante geag moet word kennis te gedra het van die identitieit van die respondent voor 15 Februarie 1971 moet beslis word met inagneming van wat die *diligens paterfamilias* onder die betrokke omstandighede sou gedoen het, ten einde te bepaal wat die beoefening van redelike sorg is. Sien *S. v Burger*, 1975 (4) SA op bl. 879D - E. Die getuienis ten aansien van die betrokke omringende omstandighede

1978 (1) SA p823

sal uit die aard van die saak ook 'n rol speel. *Brink v Mostert*, 1954 (4) SA te bl. 718B - C.

*T. D. Cloete*, for the respondent: On her own version, appellant knew the identity of defendant on the afternoon of Saturday, 13 February 1971, and appellant's action was therefore prescribed two days before the issue of summons. "Identity" in sec. 12 (3) of Act 68 of 1969 does not mean "name". Once a creditor knows sufficient details about a debtor to enable the creditor to exclude every other person in the word except that debtor, the creditor knows the "identity" of the debtor. See Burrows, *Words and Phrases Legally Defined*, 2nd ed., vol. 3, p. 1. Cf. Prescription Act, 18 of 1943, sec. 5 *(a)* (ii); *Levy v Central Mining and Investment Corporation Ltd.*, 1955 (1) SA at pp. 146F - 147B. The fact that appellant could not, because of her injuries, act on her knowledge, is irrelevant; the Prescription Act only requires knowledge, not ability to act on such knowledge: *Wulfes v Commercial Union*, 1969 (2) SA at pp. 36C - 37A; *S.A. Mutual Fire & General Insurance Co. Ltd. v Mapipa*, 1973 (3) SA at p. 608F - H. Appellant could, by the exercise of reasonable care, have acquired knowledge of the identity of respondent on 14 February 1971, and because of the proviso to sec. 12 (3) of the Prescription Act, appellant is deemed to have had such knowledge. The *onus* of showing that appellant did not know the identity of respondent and could not by the exercise of reasonable care have obtained such knowledge before a certain date, rested with appellant; but, in any event, the evidence on behalf of respondent should be preferred to that on behalf of appellant.

The trial Court found that the *onus* of proving the special plea was on respondent, with no exceptions. The trial Court was incorrect in its conclusion as to where the *onus* lay. It is conceded that the *onus* on respondent was to prove its special plea but, insofar as appellant

Copyright Juta & Company

sought to bring herself within the exception contained in sec. 12 (3), the *onus* was on appellant to prove the facts on which the exception was based. Appellant did not content herself with a mere denial of the allegations contained in the special plea, but set up a special answer thereto. In so doing, appellant attracted an *onus*. *Pillay v Krishna and Another*, 1946 AD at p. 952; *Mobil Oil Southern Africa (Pty.) Ltd.* v *Mechin*, 1965 (2) SA at p. 711D - G; *Kriegler v Minitzer and Another*, 1949 (4) SA at p. 828. In any event, if the *onus* were on respondent then respondent would have been obliged to plead that appellant acquired the required knowledge, or was deemed to have acquired the required knowledge, by failure to exercise reasonable care; and respondent's special plea would have been excipiable. See *Holmes v Salzmann*, 1913 OPD 111; *Yusaf v Bailey and Others*, 1964 (4) SA at pp. 118H - 119G. If the law were otherwise, a plaintiff need not replicate and could apply for defendant's plea to be dismissed at the end of defendant's evidence, on the basis that the basis that the defendant had not excluded the possible factual position envisaged in sec. 12(3). Alternatively, if the *onus* was on respondent to establish his plea and to exclude the exceptions contained in sec. 12 (3), then such *onus* was discharged. The facts relating to precisely when appellant first acquired knowledge of the identity of respondent were peculiarly within respondent's knowledge. It has been held that less evidence is required in such circumstances by the party bearing the *onus* to establish a *prima facie* case: See *Union Government*

1978 (1) SA p824

DIEMONT JA

(*Minister of Railways*) v *Sykes*, 1913 AD at pp. 173 - 4; but the modern tendency is to disregard the piecemeal approach and the Court has regard to the totality of the evidence in deciding whether the *onus* has been discharged, see *New Zealand Construction (Pty.) Ltd.* v *Carpet Craft*, 1976 (1) SA at pp. 348F - 349H, and authorities there cited. The Prescription Act is a beneficial statute which is in the interests of both debtor and creditor and it should be construed liberally. De Wet and Years, *Kontraktereg en Handelsreg*, 3rd ed. (1964), p. 204; *King v Walker*, (1961) 96 E.R. at p. 160; *Scales v Jacob*, (1826) 130 E.R. at p. 663. The Legislature requires a reasonably ascertainable date for prescription to commence and whether or not litigation was present to appellant's mind it is irrelevant. Cf. *Nair v Naicker*, 1942 NPD at pp. 11 - 12, approved in *Kleynhans v Yorkshire Insurance Co. Ltd.*, 1957 (3) SA at pp. 549 - 550.

*Van den Heever*, in reply.

*Cur. adv. vult.*

*Postea* (November 22).

Judgment

DIEMONT, J.A.: On 13 February 1971 a motor boat crashed into a jetty on Loch Vaal and injured the appellant. Three years later on 14 February 1974 a summons was served on the respondent claiming damages for the injuries which the appellant had sustained. The sole question in dispute at the trial was whether or not the claim had become prescribed by lapse of time.

Copyright Juta & Company

5

In the Court a quo the appellant, Mrs. Anna Gericke (born Tomaszewska) and her husband, Paul Xavier Gericke, to whom she was married out of community of property and with exclusion of the marital power, were both parties to the action. They alleged in their particulars of claim that the respondent, Karel Albert Sack, was the pilot and had been in control of a motor boat which had collided with a jetty which was owned by Gericke (first plaintiff) and on which appellant (second plaintiff) was seated at the time of the mishap. They alleged further that the collision was due to the respondent's sole negligence and Gericke accordingly claimed the sum of R217,13 in respect of damage caused to the jetty, while Mrs. Gericke, the appellant, claimed the sum of R23 307,80 in respect of medical and hospital expenses and as compensation for shock and the injuries she had suffered.

After particulars had been asked for an supplied the respondent filed a plea on the merits denying liability and a special plea to the following effect:

> "Die verweerder pleit dat die eisers nie geregtig is om hierdie aksie teen verweerder te bring nie aangesien die eisers se eis rees verjaar het omrede die skuldoorsaak ontstaan het op 13 Februarie 1971 en die eisers eers hulle dagvaarding beteken het op die verweerder op 14 Februarie 1974."

In due course a replication was filed which read as follows:

> "Die eisers repliseer op die verweerder se spesiale pleit gedateer 8 September 1975 soos volg:
>
> 1. Die eisers erken dat die dagvaarding op 14 Februarie 1974 op die

---

1978 (1) SA p825

**DIEMONT JA**

> verweerder bateken is, maar ontken dat die skuld verjaar het soos beweer en voer aan dat hulle eers op 17 Februarie 1971 kennis verkry het van die identiteit van die verweerder.
>
> 2. Uit hoofde van die bepalings van art. 11 (d) van die Verjaringswet, 68 van 1969, saamgelees met art. 12 (1) en (3) van die gemelde Wet, sou die betrokke skuld eers op 16 Februarie 1974 verjaar het.
>
> Derhalwe versoek die eisers dat die verweerder se spesiale pleit van die hand gewys word met koste.

At a pre-trial conference first plaintiff's claim for repair costs for the damage done to the jetty was abandoned and only the claim of the second plaintiff, now appellant, remained in issue. At a subsequent conference the parties agreed that, in the event of the respondent's special plea relating to prescription not being upheld, judgment would be given in favour of appellant in the sum of R4061,40. Accordingly the only issue that the trial Court had to decide was whether Mrs. Gericke's claim had become prescribed.

At the start of the trial the special plea was amended by consent to read as follows:

> "Die verweerder pleit dat die eisers nie geregtig is om hierdie aksie teen verweerder te bring nie aangesien die eisers se eis reeds verjaar het omrede die skuld opeisbaar geword het op die verweerder op 14 Februarie 1974."

Copyright Juta & Company

The period of prescription in a case such as this which is based on delict is three years, and the period begins to run as soon as the debt is due; in terms of sec. 15 (1) of the Prescription Act, 68 of 1969, that period is interrupted by the service on the debtor of any process whereby the creditor claims payment of the debt. It is common cause that the summons in this case was served on the respondent on 14 February 1974, but the appellant denies that the debt had become prescribed by that date for the reason, it is alleged, that it was only on 17 February 1971 that the identity of the respondent was established and consequently that the debt was not rendered unenforceable by lapse of time before 16 February 1974.

Appellant's averment was based on sec. 12 of the Act which reads as follows:

> "(1) Subject to the provisions of sub-secs. (2) and (3), prescription shall commence to run as soon as the debt is due.
>
> (2) If the debtor wilfully prevents the creditor from coming to know of the existence of the debt, prescription shall not commence to run until the creditor becomes aware of the existence of the debt.
>
> (3) A debt which does not arise from contract shall not be deemed to be due until the creditor has knowledge of the identity of the debtor and of the facts from which the debt arises: Provided that a creditor shall be deemed to have such knowledge if he could have acquired it by exercising reasonable care."

Evidence was led by both parties and at the conclusion of the trial it was held by the Court that the appellant had knowledge of the facts from which the debt arose - that is of the delict - on the day that she was injured, 13 February 1971. This finding was not challenged on appeal and was undoubtedly correct since the appellant was not only involved in the collision but witnessed everything that happened and there was no

1978 (1) SA p826

DIEMONT JA

suggestion that she had been rendered unconscious or suffered from any form of amnesia.

The critical issue was the identity of respondent - when did appellant acquire knowledge or when was she deemed to have acquired knowledge of the identity of the person who caused her injuries. On this issue there was a sharp conflict of evidence and both in the trial Court and in this Court counsel advanced arguments for and against the proposition that the burden of proof lay on the party who asserted that prescription had run and that the claim was extinguished. The Judge *a quo* came to the conclusion

> "that the *onus* to prove the special plea was on the defendant, with no exceptions."

Mr. *Cloete*, for the respondent, submitted that, in coming to this conclusion, the trial Court had erred. He sought, as it were, to apportion the burden of proof by contending that the *onus* was on the respondent to prove the defence raised on his special plea but, in so far as the appellant was concerned, the *onus* was on her to prove the facts on which the exception contained in sec. 12 (3) of the Act was based. In support of his argument he relied partly on the form in which the pleadings were cast and partly on two cases in which a similar question had arisen where prescription had been pleaded in an action for defamation.

In the earlier of these two cases, *Holmes v Salzmann*, 1913 OPD 111, MAASDORP, C.J.,

Copyright Juta & Company

dismissed, with more candour than courtesy, a ruling which had been laid down

> "so long ago as 1856 in the case of *Reid v Van der Wall*, 2 Searle 285, in a judgment which was apparently not written and well-considered, but one given on the spur of the moment immediately after argument."

That was a ruling in which Bell and Cloete, JJ., held that:

> "In an action of damages for slander, the law being that such action is prescribed if not brought within a year after knowledge of the slander on the part of the complainant, it is not incumbent on the plaintiff, bringing his action after the year, to prove that the slander did not come to his knowledge until within a year after the commencement of suit, but it is incumbent on the defendant to plead and prove as matter of defence that the plaintiff was aware of the slander for upwards of a year after it was uttered and yet failed to proceed. (*Grotius*, 3.35.3, note 6; *Voet*, 47.10.21.)"

MAASDORP, C.J., held that the ruling in *Reid's* case was merely an *obiter dictum* and said that in any event neither of the passages cited from *Voet* and *Groenenwegen's* note to *Grotius* lend support to it. He posed the question:

> "Why, then, should the defendant in the present case be called upon to allege in his plea knowledge on the part of the plaintiff, a matter as to which he may be wholly ignorant and of which the plaintiff has of necessity a very special knowledge?"

The decision in *Holmes v Salzmann* was approved and the reasoning adopted and applied in the second case cited by respondent's counsel - the case of *Yusaf v Bailey and Others*, 1964 (4) SA 117 (W). This was a matter in which a similar problem faced the Court, namely which party must bear the *onus* of proof which arises where the date on which the defamation was first brought to the knowledge of the claimant is in dispute. VIEYRA, J., is reported at p. 119 of the judgment to have stated:

> "Counsel told me that they could not find any decided cases dealing with this point. There are however two reported cases dealing with the point. The first is that of *Reid v Van Wer Wall*, 2 S. 285. Relying on *Voet* 47.10.21 and *Groenenwegen's* Note 6 to *Grotius*, 3.35.3., the Court came to the conclusion that the *onus* of pleading and proving that the plaintiff was aware of a slander rested on the defendant. The other is *Holmes v.*

1978 (1) SA p827

DIEMONT JA

> *Salzmann*, 1913 OPD 111, in which the Court (MAASDORP, C.J.) came to the contrary conclusion (see at p. 118). It was pointed out that the authorities relied on in the earlier case did not bear out the inference drawn, as indeed is the case. Moreover it would be contrary to principle to cast an *onus* on a defendant in relation to the facts so peculiarly within the knowledge of the plaintiff. The earliest date from which the period laid down in sec. 3 (2) (b) (i) of the Prescription Act, 18 of 1943, can run is the date of the publication of the defamatory matter. In the vast majority of cases a defendant would have no means of establishing exactly when the plaintiff first learned of the defamation or ascertained the identity of the parties responsible. The conclusion is that the *onus* must lie on the plaintiff. I respectfully agree with the decision of the Orange Free State Court."

In urging the Court to apply the same reasoning in the case now under consideration, Mr. Cloete conceded that *Holmes v Salzmann* was decided under the common law and *Yusaf v Bailey* under the old Prescription Act of 1943, but argued that basically the position remained unchanged under the Prescription Act of 1969. I am prepared to accept for the purpose of counsel's argument that the change in wording in the new Act (cf. sec. 5 of Act 18 of 1943 with sec. 12 of Act 68 of 1969) does not provide a ground for distinguishing these two cases, but I

Copyright Juta & Company

am not prepared to accept that the reasoning must be followed. It may well be, as was emphasized in both the judgments referred to, that it will at times be difficult for a debtor who pleads prescription to establish the date on which the creditor first learned his identity or, for that matter, when he learned the date on which the delict had been committed.

But that difficulty must not be exaggerated. It is a difficulty which faces litigants in a variety of cases and may cause hardship - but hard cases, notoriously, do not make good law. It is not a principle of our law that the *onus* of proof of a fact lies on the party who has peculiar or intimate knowledge or means of knowledge of that fact. The incidence of the burden of proof cannot be altered merely because the facts happen to be within the knowledge of the other party. See *R.* v *Cohen*, 1933 T.P.D. 128. However, the Courts take cognizance of the handicap under which a litigant may labour where facts are within the exclusive knowledge of his opponent and they have in consequence held, as was pointed out by INNES, J., in *Union Government (Minister of Railways)* v *Sykes*, 1913 AD 156 at p. 173, that

> "less evidence will suffice to establish a *prima facie* case where the matter is peculiarly within the knowledge of the opposite party than would under other circumstances be required."

But the fact that less evidence may suffice does not alter the *onus* which rests on the respondent in this case. Nor does it seem to me that counsel can advance his argument by reliance on the rather unusual manner in which the allegations relating to this issue were pleaded. Mr. *Cloete* pointed to the replication and argued that it was the appellant who alleged that it was not until 17 February 1971 that she learned the identity of the respondent - she did not content herself with a mere denial of the allegations contained in the special plea; in so doing she attracted an *onus*.

That submission is without substance; it overlooks the fact that it was the respondent, not the appellant, who raised the question of prescription. It was the respondent who challenged the appellant on the issue that the claim for damages was prescribed - this he did by way of a special plea five months after the plea on the merits had been filed. The *onus* was clearly on the respondent to establish this defence. He could not succeed

1978 (1) SA p828

DIEMONT JA

if he could not prove both the date of the inception and the date of the completion of the period of prescription. He accordingly alleged in his special plea that the debt was prescribed because the debt had become due on 13 February 1971 and summons was served only on 14 February 1974. However the Act specifically provides that prescription begins to run only when the debt becomes due and that it is not deemed to become due until the creditor has knowledge both of the identity of the debtor and of the facts from which the debt arises. It follows that if the debtor is to succeed in proving the date on which prescription begins to run he must allege and prove that the creditor had the requisite knowledge on that date. The fact that the appellant has alleged in her replication that she learned the respondent's identity only on 17 February 1971 does not relieve the respondent of the task of proving that she acquired that knowledge on 13 February 1971 - the date on which he relies.

Copyright Juta & Company

The criticism advanced in argument of the trial Judge's ruling on the question of *onus* therefore fails and the respondent must show on the evidence when Mrs. Gericke learned or was deemed to have learned the respondent's identity.

It was common cause that the respondent could succeed if it were proved that prescription had begun to run either on Saturday 13 February 1971 or on Sunday 14 February 1971, since the three year period would have terminated either on 12 or 13 February 1974 before the summons was served.

The Judge *a quo* made no positive finding on the evidence as to whether or not the appellant knew the identity of the debtor on either 13 or 14 February 1971. Regard being had to the poor quality of the evidence which the appellant gave he was more than justified in stating that the question was "not so simple". Mrs. Gericke was closely questioned but throughout a fairly lengthy cross-examination remained evasive on the critical issue as to when she learned the respondent's identity:

> "When did you decide to find out who the defendant was? - I do not understand the question.
>
> You know who the defendant is? - No.
>
> Mr. Sack? - I didn't know at that time who it was.
>
> When did you find out? - After quite a while."

And then again

> "When did you find out the name of the pilot of that boat? - Your Lordship I wouldn't know.
>
> 1972? - Perhaps, I can't remember."

She either would not, or could not, explain why it was specifically alleged in her replication that they - she and her husband - had learned the identity of the respondent on 17 February 1971, four days after the collision. When pressed she fell back on the excuse that her husband "organized everything, I had nothing to do with it".

The trial Judge summed up her evidence as follows:

> "The plaintiff knew it was the pilot of boat No. 12, but otherwise she was an utterly unhelpful witness. I have no doubt that she was not seriously injured. She knew what had happened, but she has a habit of pretending to be helpless and in need of care".

Despite the vagueness of this evidence counsel for the respondent argued that appellant had admitted facts in the witness-box which proved that she knew the identity of the respondent on the afternoon of Saturday 13 February 1971. He contended that the phrase "the identity of the

1978 (1) SA p829

DIEMONT JA

debtor" as used in sec. 12(3) of the Act did not mean "the name of the debtor". Once a creditor knew sufficient details about a debtor to enable him to exclude every other person in the world except that debtor, the creditor knew the identity of the debtor, even though he did not know his

Copyright Juta & Company

name. In other words identity was synonymous with facts by means of which identity could be established. In support of this contention he referred to *Words and Phrases Judicially Defined*, Burrows, 2nd ed. (1969), vol. 3, p. 1, *s.v.* "identity" where there is authority for the proposition that the identity of a vehicle cannot be established unless sufficient information be collected to exclude every other vehicle in existence but the one in question.

I am not persuaded that there is any merit in this contention. The Act provides in express terms that prescription does not begin to run

> "until the creditor has knowledge of the identity of the debtor",

not that prescription will begin to run as soon as the creditor has knowledge of facts or information from which it will be possible for him to deduce or discover the identity of the debtor. So, for example, he may be in possession of the debtor's fingerprints and this may enable him to track down and establish the debtor's identity within a matter of hours or days - on the other hand he may find himself defeated after months of search. Or again he may have the registration number of the motor vehicle which has caused him injury; this may lead to speedy identification, but if it is a stolen vehicle, it may not. In the present case the appellant was armed with the knowledge that she was injured by the pilot of a ski-boat - No. 12 - which was competing in a race held under the auspices of the Loch Vaal Aquatic Club on 13 February 1971. This information may have assisted her in establishing the identity of the debtor with little delay; on the other hand further investigation might have become necessary when she read the entry form (exh. "C") and found out that there were three persons in the boat anyone of whom might have been the pilot at the moment of impact.

In developing his argument counsel pointed out that the word "identity" was nowhere defined in the Act and could be given the wide meaning for which he contended. He argued that the fact that appellant learned the respondent's name only on 17 February or at a later date was of no consequence.

It is correct that the words "identity of the debtor" are not defined in the Act - nor indeed is any other word or phrase defined - and the question is whether the wide interpretation which counsel seeks to put on the words is justified. In common parlance I apprehend that the identity of an individual can be said to be determined when one or more of his characteristics is established so that he is definitively recognizable or known. Thus it may serve to identify an indivduial if his registration number as a citizen of the Republic is ascertained. But in order to determine the meaning which the Legislature intended to give the words they should be read in the context in which they are used in the Act. Sec. 12(3) provides that a debt not arising from contract is deemed to be due and that prescription consequently begins to run, when the creditor has knowledge of "the identity of the debtor"; the alert creditor may interrupt the running of prescription by causing process to be served on the debtor in terms of sec. 15.

1978 (1) SA p830

DIEMONT JA

In order to establish the identity of the person on whom service is to be effected the sheriff will require the name and address of the debtor; it will not suffice to tell him that service must be

Copyright Juta & Company

effected on the pilot of a boat which competed in a race on 13 February 1971.

It may be that in some cases the debtor is so distinguished, or notorious, that no address is necessary, or in other cases that his name is so commonplace that a detailed address is called for. Regard will have to be had to the particular circumstances of each case, but for practical purposes it seems to me that there should be sufficient information for the process-server to be able to identify the debtor by name and address.

The conclusion to which I accordingly come is that even though the *onus* on the respondent was a light one he failed to prove that the appellant had knowledge of his identity on 13 or 14 February 1971.

The question remains, however, whether the trial Judge was right in deciding that the appellant must be held to have had knowledge of respondent's identity by virtue of the operation of the deeming provision in sec. 12(3) of the Act.

In his judgment the Judge *a quo* stated that:

> "I am satisfied that probably on the 13th, but certainly on the 14th, the plaintiff's husband knew the identity of the defendant".

There is ample evidence to support this finding since he accepted the evidence of Jacobs, the commodore of the boating club, and the evidence of respondent, and by implication did not believe the evidence given by appellant's husband on this issue.

Respondent told the Court that he had had two conversations with Gericke shortly after the collision took place - firstly, when he asked permission to bring a vehicle across appellant's ground to the jetty so as to attempt to remove the boat and thereafter, when one of the club officials was present who asked for his name and address and when he and Gericke and Hodgson wrote down one another's names and addresses. He clearly remembered the incident:

> "U Edele, hy het my naam en adres op 'n sigaretdosie afgeskryf in die teenwoordigheid van daardie ander persone en ek het nog baie duidelik my naam en adres gegee want hy kon nie mooi my naam verstaan of ek weet nie of hy dit nie kon spel of wat nie maar ek moes dit baie duidelik aan hom spel, my naam en adres."

Jacobs corroborated this evidence although he took no part in the conversation. He testified that he was the commodore of the Loch Vaal Club and resided at the club in his cottage. he said that he had known both Gericke and the respondent personally for several years before 13 February 1971, the day on which the skiing regatta took place and the accident happened. When a report was brought to him of the collision he went by boat to investigate the matter. He found that an elderly lady, a Mrs. Hodgson, and her grandson had been injured and were being attended to by first-aid officials, and that respondent was standing on the jetty talking to appellant's husband and to Mr. Hodgson. They were writing something down on some cigarette paper or on the back of a cigarette box. A young lady was also present and he could recall that she and respondent were writing, but he could not remember whether Gericke and Hodgson were also writing. The witness stated further that on the day following the collision, that is on the Sunday 14 February, appellant's husband came to see him between five and six in the evening at his cottage and asked what

Copyright Juta & Company

1978 (1) SA p831

DIEMONT JA

the Club was going to do about the accident. In answer to a further question concerning the pilot's identity Jacobs said:

> "He asked me for the name and address of the pilot and I said to him I know the name of the pilot is Mr. Karel Sack from Pretoria but I did not have his address, residential address, available at my cottage at the time but I said if you come the next morning my secretary will be only too happy to supply you with the name and address of the pilot".

The witness was adamant that this conversation took place on the day following the accident and not a week later as alleged by Gericke. The evidence given by Jacobs reads convincingly; I have little doubt that respondent's husband learned who the pilot of boat No. 12 was very soon after the collision took place. He was an angry man, his jetty had been damaged, persons had been injured and the culprit was standing by; it would be most surprising if he did not, there and then, ask the man who he was and how he had come to act so foolishly. I am satisfied that on a balance of probabilities the respondent proved that his identity became known to the appellant's husband on 13 February 1971.

Counsel for appellant argued that the question was not what Gericke knew, but what his wife knew that was important, and as he had consistently declined to tell his wife anything about the mishap so as not to distress her she could not be deemed to have acquired knowledge of respondent's identity during the Saturday or the Sunday. It is true that appellant stated that:

> "my husband refused to talk about the accident at all. He just said to me take care of yourself and leave matters to me".

She said she was told by him to mind her own business.

> "My husband organized everything. I had nothing to do with it. He wouldn't let me".

It would appear that Gericke at all times acted as his wife's agent and that she was content to sit back and "mind her own business'. But that attitude does not in the circumstances of this case avail appellant.

I think the trial Judge would on this evidence have been justified in finding that not only Gericke but also the appellant could by the exercise of reasonable care have learned the identity of the respondent within a very short time after the boat hit the jetty. It is true that she was to some extent shocked, and later suffered pain, and that that evening she was taken to hospital, but her statement that she lost consciousness and only recovered after she had been taken to her house is a gross exaggeration. The commodore of the club, Jacobs, who was as I have said a reliable witness, arrived on the scene some little while after the collision had occurred. He saw the appellant seated on a chair on the jetty; there was no sign at that stage that she was a casualty. Respondent confirmed this evidence. Two people were injured, an elderly woman, Mrs. Hodgson, and a small boy. The appellant had remained seated on a chair. He said that she made no complaint and that there was no sign of any injury. She was medically examined on the following morning. Dr. Lategan stated twice during his evidence-in-chief and again under

Copyright Juta & Company

cross-examination that her condition was not serious:

> "Ek (was) onder die indruk dat hierdie toestand geensins ernstig was nie."

Under cross-examination he said that she was a person who readily complained about her ailments. Her blood pressure was normal; he found no sign of the "black outs" of which she complained; she could carry

1978 (1) SA p832

**DIEMONT JA**

on a normal conversation and she was fully conscious and *compos mentis*. She was able to tell him that she had been injured in a collision involving the Loch Vaal Boating Club.

In the light of the evidence that appellant's injuries were of a comparatively minor nature I see no good reason why she should not then and there have asked the respondent who he was or, if she felt too perturbed to speak to him personally, why she should not have put the same question to the two uniformed club officials who arrived on the scene within minutes of the occurrence. Moreover she could at any time later in the afternoon have asked her husband or her son the same question or have asked them to make inquiries at the club house which was only 200 or 300 yards away. It does not seem to me that this was asking too much of appellant or causing her any hardship. The Act merely requires the creditor to seek such knowledge by the exercise of reasonable care; she is not required to issue summons - she is given a generous three years in which to institute proceedings. All that she is called on to do is to ask one question to establish identity and not to be content to pay a purely passive roll. If she could have acquired this knowledge by acting diligently, her inertia, ineptitude or indifference will not excuse her delay. The creditor who fails to exercise the reasonable care prescribed by the Act must pay the penalty for he is then deemed to have acquired the knowledge necessary for the debt to become due and for prescription to begin to run. The appeal is accordingly dismissed with costs.

RUMPFF, C.J., JANSEN, J.A., TRENGOVE, A.J.A., and KLOPPER, A.J.A., concurred.

Appellant's Attorneys: *Eli van der Merwe, Vorster, Von Bratt, Du Toit & Fuchs*, Pretoria; *Siebert & Honey*, Bloemfontein. Respondent's Attorneys: Arnold Kretzmar & Kie., Pretoria; *Symington & De Kok*, Bloemfontein.

**Defence of**

**Prescription** - Defence of - Must be taken by way of a special plea. *Walsh, NO v Scholtz* 1968 (2) SA 222 (GW)

Period of

**Prescription** - Period of - Computation of - Application of ordinary civil rule - Not affected by

Copyright Juta & Company

fact that last day a Sunday. *Somdaka v Northern Assurance Co Ltd* 1961 (4) SA 764 (N)

**Prescription** - Period of - Computation of - Ordinary civil rule to be applied in absence of clear wording to the contrary. *Kleynhans v Yorkshire Insurance Co Ltd* 1957 (3) SA 544 (A)

**Prescription** - Period of - Extra 60 days in s 11 (2) *(a)* of Act - Apply also to claims under the Act against defendants other than registered insurers. *Ndhlovu and Others v Durban City Council* 1968 (2) SA 819 (D)

Copyright Juta & Company