# Exhibit C

**The Minister of Public Works and Land Affairs and another v Group Five Buildings Ltd**
**[1997] JOL 331 (A)**

| | |
|---|---|
| Reported in (Butterworths) | Not reported in any Butterworths printed series. |
| Case No: | 653 / 94 |
| Judgment Date(s): | 30 / 05 / 96 |
| Hearing Date(s): | 14 / 05 / 96 |
| Marked as: | Reportable |
| Jurisdiction: | Supreme Court |
| Division: | Appellate Division |
| Judge: | Marais JA |
| Bench: | Botha, EM Grasskopf, Vivier, Marais, Schutz JJA |
| Parties: | The Minister of Public Works and Land Affairs, The Director General of the Department of Public Works and Land Affairs (A); Group Five Buildings Ltd (R) |
| Appearance: | State Attorney (A); Adv A Kruger, Israel & Sackstein (R) |
| Categories: | Appeal – Civil – Private |
| Function: | Confirms legal principle |

**Key Words**

Contract – Breach – Delay – Damages – Reciprocal obligation between parties – Time when contractual debt becomes due – Prescription – Commencement of prescription under a contract – Interpreting "reciprocity" of debts due

**Mini Summary**

In a claim for damages for breach of contract, finding such claim arises by debtors's failure to perform designated contractual obligations. A right of action will accrue only when the contract has been completed and the debtor offers his completed but defective work as ostensible performance of his obligation. Creditor entitled to sue defaulting debtor for breach of contract in the form of either specific performance or damages. Further, where breach consists of delay in performance of an obligation, it cannot be obliterated by ex post facto timeous performance of selfsame act. The fact that the consequences of the delay may be mitigated, cannot detract from the fundamental truth. Further, in a claim for damages for breach of contract, absent any interruption or suspension of the running of prescription against the claim, prescription would have commenced to run in terms of sections 12(1) and (3) of Act 68 of 1969 as soon as the "debt" was "due" unless the contractor did not have knowledge of the identity of the debtor and of the facts from which the debt arose or could not have acquired it by exercising reasonable care. Held, reciprocity of debt in law does not exist merely because the obligations which are claimed to be reciprocal arise from the same contract and parties are inter se indebted in some way. A far closer, more immediate correlation is required.

Page 1 of [1997] JOL 331 (A)

**MARAIS JA:** This appeal is concerned with but one of the many jousts which have taken place during the somewhat tortuous progress of the litigation through the courts. First appellant is the Minister of Public Works and Land Affairs. Second appellant is the Director General of the Department of Public Works and Land Affairs. Respondent is Group Five Building Limited (the "contractor"), a public company engaged in the construction industry. In October 1983 first appellant and the contractor concluded a written building contract in terms of which the contractor undertook to execute certain building works at the Komani Hospital in Queenstown. The work included both the erection of new buildings and the alteration and extension of existing buildings. The work was done and the contractor has been paid what appellants claim is due to it. The contractor maintained that there was

Page 2 of [1997] JOL 331 (A)

further money owing to it and launched an action in April 1988 in the Transvaal Provincial Division for payment. The basis of the claim (styled Claim A) originally made was that the contractor had been deprived unjustifiably of certain extensions of time (amounting in all to 85 days) to which it was entitled;

that that had had the effect of subjecting it to the daily penalty of R770 for which the contract made provision if the works were not completed timeously; that consequently a sum of R65 450 had been deducted wrongly from sums which would otherwise have been due to it; and that first appellant should therefore be ordered to pay respondent R65 450 with interest and costs.

A second claim (styled Claim B) was added by way of amendment early in 1992. It was based upon the alleged existence of certain implied or tacit terms entitling the contractor to be furnished

**Page 3 of [1997] JOL 331 (A)**

timeously with drawings and instructions and to be given "unrestricted access" to the site without delay. It was alleged that there had been a failure to comply with those terms and that it was a further implied or tacit term that in such circumstances the engineer would be obliged to certify payment of, and first appellant would be obliged to pay, "a reasonable remuneration in respect of any loss and/or expense thereby caused" to the contractor for which it "would not be otherwise compensated or reimbursed by a payment made under any other provision of the Contract and that such reasonable remuneration would be based upon the provisional and general rates stipulated in the Contract". A sum of R3 467 217,12 with interest and costs was claimed.

An alternative claim (styled Claim C) to Claim B was also set up. The same amount (R3 467 217,12) with interest and costs was

**Page 4 of [1997] JOL 331 (A)**

claimed but the basis of the claim was an express agreement, allegedly concluded in July or August 1990, to compensate the contractor for the delays complained of in Claim B upon the contractor satisfying the first and/or second appellant that it in fact suffered financial prejudice or damage. It was alleged that it "was understood and agreed ... that the compensation payable ... would be a reasonable remuneration which would be based on the Provisional and General Rates in the Contract".

An alternative claim (styled Claim D) to Claim C was introduced by way of amendment. The amendment was effected on 7 February 1992. It will suffice at this stage to give its substance. The same implied or tacit terms which had been alleged in Claim B were repeated (drawings and instructions to be timeously furnished, unrestricted access to be given to the site without delay); the adverse

**Page 5 of [1997] JOL 331 (A)**

financial consequences to the contractor caused by delay in fulfilling those terms were spelt out; the absence of any provision in the contract or the bill of quantities which would empower the engineer to compensate the contractor for such loss or expense was alleged; and damages in an equivalent sum (R1 401 901,64) for breach of the implied or tacit terms, interest and costs were claimed.

In addition to their plea to the amended particulars of claim appellants filed a special plea of prescription in answer to Claims B and D, to which the contractor replicated. When the matter came to trial before DANIELS J. the trial did not proceed because of the absence of a witness. Instead, the available time was used to dispose of what were described as two points *in limine* raised by appellants but they were in substance belated exceptions to Claims A and B on the ground that they disclosed no cause of action. On 2 March 1993 DANIELS J.

**Page 6 of [1997] JOL 331 (A)**

upheld appellants' contentions and issued an order in, *inter alia*, the following terms: "The objection/exception to Claims A and B as disclosing no cause of action and/or being bad in law is upheld" and "The plaintiff is given leave to amend its pleadings if so advised provided that a notice of amendment is served on the defendant within 20 days from date hereof". Commendably, appellants incorporated in the record only those documents considered to be essential for the adjudication of the appeal but the consequence is that it is not always possible to discover what mutations they underwent from time to time. It seems that the contractor must have amended Claims A and B after DANIELS J. had held them to disclose no cause of action because they appear in the light of further events to have remained live issues.

On 11 April 1994 the contractor issued a notice of motion in terms of Rule 33(4) in which it sought an order that certain issues be

**Page 7 of [1997] JOL 331 (A)**

determined separately. Some of those issues were relevant to Claim A; some were relevant to Claim D. For reasons which will emerge shortly it is unnecessary to say anything more about the former. The issues relating to the latter were formulated as follows:

> "1.2 In regard to Claim D.
>
> 1.2.1 Whether it was an implied or tacit term of the agreement that the engineer was obliged to issue such drawings and instructions to the plaintiff as may reasonably be required by the plaintiff in order to enable the plaintiff to execute the works as defined in the contract; and that each such drawing or instruction had to be issued, as the case may be, within a reasonable time after the obligation to issue such drawing or instruction arose.
>
> 1.2.2 If so, whether the obligation to issue such instructions and drawings timeously would arise in the event:
>
>> 1.2.2.1 Only if demand placing the first defendant *in mora* was made in writing or the first defendant or second defendant agreed (whether in writing or otherwise) to furnish such instruction or drawing by a specified

**Page 8 of [1997] JOL 331 (A)**

>> date (as contended by the defendants); or
>>
>> 1.2.2.2 If either a demand (whether oral or in writing) placing the first defendant *in mora* was made or the first or second defendant agreed (whether orally or otherwise) to furnish such instruction or drawing by a specified date as (contended by the plaintiff).
>
> 1.2.3 Whether, as contended by the defendants, it is also part of the implied term referred to in 1.2.1 hereof that such a demand could only be made by the plaintiff when it had a reasonable need for such drawing or instruction.
>
> 1.2.4 Whether it was an implied or tacit term of the agreement that the first defendant was obliged to give the plaintiff unrestricted access to the site, or to those portions of the site on which each part of the works was to be executed, without delay such that the plaintiff would be able to commence the works in good time to enable the plaintiff to complete the works timeously; and, where a specific date was agreed upon, on that date.
>
> 1.2.5 Whether the claim has prescribed on the basis of the agreed facts set out in Annexure A hereto."

The agreed facts in Annexure A were these:

> "A PRESCRIPTION

**Page 9 of [1997] JOL 331 (A)**

> 1.1 On or about 7 October 1983 and within the jurisdiction of this court the plaintiff concluded a written building contract with the first defendant, in terms of which the plaintiff undertook to execute certain building works at the Komani Hospital in Queenstown.
>
> 1.2 The said building contract consisted of:
>
>> 1.2.1 a written tender dated 31 August 1983 submitted by the plaintiff, a copy of which is Annexure A to the particulars of plaintiff's claim;

1.2.2 a written acceptance of the said tender by way of a letter to the plaintiff dated 7 October 1983, a copy of which is Annexure B to the particulars of claim;

1.2.3 a written contract number 30190 signed by the plaintiff and by or on behalf of the Director General: Community Development acting on behalf of the employer at Johannesburg on 18 July 1984, a copy of which is Annexure C to the particulars of claim;

1.2.4 written conditions of contract Form G0203 and amendments thereto, all of which were signed by the plaintiff and by or on behalf of the Director General: Community Development, a copy of which is Annexure

**Page 10 of [1997] JOL 331 (A)**

D to the particulars of plaintiff's claim;

1.2.5 the drawings, specifications and bills of quantities are referred to in the said contract number 30190, a copy of the preliminary and general section of which bill of quantities is annexed as Annexure D1 to the particulars of claim and a copy of the final summary page of the bill of quantities which is annexed as Annexure D2 to the particulars of plaintiff's claim.

2. A copy of the conditions of contract, Annexure D to the particulars of claim, is annexed hereto marked AF1.

3. The plaintiff alleges (and the court must assume for the purposes of prescription) that:

3.1 the contract was subject to the implied or tacit terms referred to in paragraphs 2.1 and 2.2 of Claim B of the particulars of claim; and

3.2 The first defendant committed the breaches as set out in paragraph 2 of Claim D of the particulars of claim.

4. All the alleged breaches referred to in paragraph 2 of Claim D occurred before 8 July 1987.

5. The last of the completion certificates contemplated by clause 17(v) of the conditions of contract (Annexure AF1 hereto) was issued to be effective

**Page 11 of [1997] JOL 331 (A)**

on 7 (*sic* – the certificate reflects 8) July 1987, a copy of such certificate being Annexure AF2 hereto.

6. The final certificate (that is the engineer's certificate that the 'Works are in good order' as envisaged in clause 19(i)) was issued on 10 April 1990 to reflect that the works were completed on 6 March 1989, and a copy of which certificate is annexed hereto marked AF3.

7. The application for an amendment to include Claim D was made by notice of intention to amend delivered on 16 January 1992 and is deemed for the purposes of prescription to have been effected on 7 February 1992.

B FACTS RELATING TO TERMS OF THE CONTRACT

8. The net value of the variations, additions and omissions to the contract was approximately R2 226 831 as reflected in the certificate of payment no 41 issued by the first defendant, a copy of which is Annexure AF4 hereto.

9. During the course of construction more than 100 drawings and more than 100 site instructions (each of which is an 'Order in Writing') as contemplated by clause 1(x) of the conditions of contract were issued by the second defendant to the plaintiff.

10. At the time of entering into the contract the site on

Page 12 of [1997] JOL 331 (A)

which the building works were effected:

10.1 was an area of approximately 160 hectares;

10.2 had many existing buildings on the terrain which were occupied, *inter alia*, by doctors, nurses, patients (including psychiatric and geriatric patients) and staff of the hospital.

11. Some of the construction work was to be effected to existing wards.

12. The layout of the site is as reflected on Master Plan No 19537/M1 in which the existing buildings are depicted in blue and the buildings to be constructed in red."

VAN DER WALT J acceded to the application and proceeded to hear argument on the issues so raised. The conclusions to which he came on the issues relating to Claim A need not be set out for there is no appeal against the orders granted by him in respect of Claim A. There is also no appeal against some of the orders granted in respect of the issues germane to Claim D. What is before this court on appeal as a consequence of leave to appeal having been granted pursuant to

Page 13 of [1997] JOL 331 (A)

a petition to the Chief Justice after the court *a quo* had refused leave to appeal, are the following orders:

"(2) a declaration in terms of paragraph ... 1.2.4 of the notice of motion that certain terms are to be implied in the contract in relation to Claim D of the particulars of claim; and

(3) a declaration in terms of paragraph 1.2.5 of the notice of motion that Claim D of the particulars of claim has not been extinguished by prescription.

(4) Following upon the declaration in paragraph (3) above, the defendants' special plea of prescription is dismissed.

(5) The costs of these proceedings are to be borne by the defendants, and include the costs of two counsel."

The net effect of these orders was thus to declare that the contractor was entitled to unrestricted access to the site or any part of it, to declare that Claim D was not prescribed, and to render appellants liable for the costs of the proceedings. The conclusion to which I have come on the issue of prescription renders it unnecessary for me to consider whether or not it was appropriate for an issue such as that

Page 14 of [1997] JOL 331 (A)

raised in paragraph 1.2.4 of the notice of motion to be considered separately and in relative isolation with only a modicum of the facts which it might be necessary to know having been placed before the court by way of agreement between the parties; whether or not a declaratory ruling of this nature is in truth a judgment or order against which an appeal lies now before the trial has run its course and judgment has been given; and, if it is, whether or not the learned judge *a quo* was correct in his conclusion. Upon enquiring whether or not this particular issue would become academic if Claim D was held by this court to have become prescribed, we were informed by counsel on both sides that it would indeed become academic. As I have come to the conclusion that Claim D had become prescribed and that the special plea of prescription should have been upheld and Claim D dismissed, it is unnecessary to devote any further

Page 15 of [1997] JOL 331 (A)

consideration to the issue raised in paragraph 1.2.4 of the notice of motion.

I turn to the issue of prescription. The court *a quo* concluded that Claim D was not prescribed for the following reasons. After pointing out that the alleged breaches had occurred prior to both certification by the engineer of the final completion of the works as being 8 July 1987, and to the commencement of the three month maintenance period which had to elapse before the contractor would be entitled to payment of the outstanding balance due to it after the engineer had issued the final certificate certifying the works to be in good order, the learned judge reasoned that the contractual relationship between the parties ended only on 6 March 1989 because on 10 April 1990 the engineer signed a final certificate certifying that the works were completed on 6 March 1989. Taking the view that it is "this

Page 16 of [1997] JOL 331 (A)

final payment and its extent which is in issue in this action", that *mora* in that regard commenced only on 6 March 1989, and finding what he considered to be inferential support for that view in *Electricity Supply Commission v Stewarts and Lloyds of SA (Pty) Ltd* 1981 (3) SA 340 (A), he concluded that prescription against Claim D commenced to run only as from that date. As Claim D had been instituted on 7 February 1992 and thus before the expiry of the applicable prescriptive period of three years reckoned from 6 March 1989, the claim was not prescribed. In further support of his conclusion the learned judge cited this passage in *LAWSA* Vol 21 at page 77, paragraph 99:

> "A claim for damages for breach of contract arises when the debtor fails to perform his contractual obligations during the performance of the contract. As the debtor might remedy his prior breach at any stage during the execution of the contract, the right of action will accrue only when the contract has been completed and the debtor offers his completed but defective work as ostensible performance of his obligation. The creditor

Page 17 of [1997] JOL 331 (A)

> is entitled to sue the defaulting debtor for breach of contract immediately upon the purported completion of the contract for either specific performance or damages."

The learned judge reasoned: "Where 'defective work' is mentioned in this passage, it could very well read 'defective performance'. In other words, it would refer to the case where the sufficiency of the amount paid is in issue because of alleged damages caused by certain alleged breaches of the contract by the State". Whether or not the debt which the contractor sought to recover in Claim D was also regarded by the court *a quo* as a debt reciprocal to an unprescribed debt owed by the contractor to appellants and thus also unprescribed by reason of the provisions of section 13(2) of the Prescription Act 68 of 1969 ("the Act") is not clear. Specific reference was made to the provisions of section 13(2) by the learned judge in delineating the ambit of the enquiry but no further direct reference to it was made in

Page 18 of [1997] JOL 331 (A)

the judgment.

In my view the analysis by the court *a quo* of the situation is not sound. Counsel for the contractor were obliged to concede that Claim D was a claim for damages for breach of contract and that, absent any interruption or suspension of the running of prescription against the claim, prescription would have commenced to run in terms of section 12(1) and (3) of the Act as soon as "the debt" was "due" unless the contractor did not have "knowledge of the identity of the debtor and of the facts from which the debt arises" or could not "have acquired it by exercising reasonable care". Quite rightly, no attempt was made to support the judgment of the court *a quo* in so far as it might be thought to have rested upon a reciprocity of debt within the meaning of section 13(2) of the Act. The provision does not delay the commencement of the running of prescription: it serves merely to

Page 19 of [1997] JOL 331 (A)

prevent prescription from taking its toll when the appropriate period has elapsed if there then happens to be in existence a reciprocal debt which is not yet prescribed. One looks in vain for such a debt in this case. Not only has no specifically identifiable unprescribed debt (other than the broad obligation to continue

constructing the works) due by the contractor to appellants at any of the potentially relevant times been shown to have existed, but any such debt plainly could not have been regarded as reciprocal in law to appellants' alleged liability to compensate the contractor for damages suffered as a consequence of breaches of contract by appellants. Reciprocity of debt in law does not exist merely because the obligations which are claimed to be reciprocal arise from the same contract and each party is indebted in some way to the other. A far closer, and more immediate correlation than that is required. See

**Page 20 of [1997] JOL 331 (A)**

*BK Tooling (Edms) Bpk v Scope Precision Engineering (Edms) Bpk* 1979 (1) SA 391 (A) at 415H-418C. The contractor's right to claim damages for breach of contract is not matched by any *particular* obligation towards appellants on its part. It is not required to have performed or to tender performance of any reciprocal obligation in asserting such a claim. To the extent that the judgment in *LTA Construction Ltd v Minister of Public Works and Land Affairs* 1992 (1) SA 837 (C) is at variance with what I have said, it must be regarded as having been wrongly decided as counsel on both sides were at one in contending.

The *Electricity Supply Commission* case (*supra*) is not *in pari materia* as counsel for the contractor rightly conceded. In that case the provisions of the contract precluded the institution of a claim at common law for damages for breach of contract during the maintenance period. As HOLMES AJA put it at page 347B-E:

**Page 21 of [1997] JOL 331 (A)**

> "So long as this contractual relationship lasted, the parties' rights and remedies lay within the four corners of the contract. This includes clause 47 (read with clause 46) which is to the effect that *for a period of twelve months* after the contract works have been taken over, the respondent shall be responsible *to the extent in this clause expressed* for defects in the material and workmanship that may develop within the maintenance period ... from faulty material, design or workmanship in the contract works but *not otherwise* ...'.
>
> The last paragraph of clause 47 is also significant: the contractor is under no liability in respect of defects developing during the maintenance period, 'save as in this clause expressed'.
>
> The effect of the foregoing passages, in my view, is this. If any defect due to the respondent's fault should develop during the currency of the contract including the maintenance period, the appellant's rights and remedies are those specified in the contract. If any such defect developed afterwards, only common law rights and remedies (if any) are available."

The observation by the learned judge *a quo* that it was "this final payment and its extent" which was "in issue in this action" is inaccurate in so far as it suggests that that was the ultimate issue raised by the differing causes of action pleaded by the contractor. It

**Page 22 of [1997] JOL 331 (A)**

was conceded by counsel for the contractor, and correctly so, that the cause of action in Claim D was founded upon the premise that while the contract empowered the engineer to grant extensions of time by reason of breaches of implied terms such as those upon which the contractor relied, it did not empower the engineer to award appropriate compensation for the loss and expense so caused. Indeed, it was pertinently so pleaded by the contractor in setting up Claim D. It follows inexorably that the final payment to be quantified and certified by the engineer would be logically unconnected with and therefore irrelevant to the claim for damages for breach of contract pleaded in Claim D. When the contractual relationship between the parties came to an end is therefore equally irrelevant to the question of when prescription commenced to run against the debt which it was sought to recover by the institution of Claim D.

**Page 23 of [1997] JOL 331 (A)**

The reliance upon the passage from *LAWSA* was also misplaced. It can have no application where, as here, the breaches which had occurred were of such a kind that they were incapable of being rectified subsequently either during the remaining currency of the contract or at all. Where a breach consists of

*delay* in the performance of an obligation it is writ in stone and cannot be obliterated *ex post facto* by a subsequent "timeous" performance of the selfsame act. It is notionally impossible to do so. The fact that the *consequences* of delay may be mitigated or may be compensated for by a monetary payment *dehors* the contract which is in reality a payment of damages, does not detract from that fundamental truth. In this Court counsel for the contractor sought to overcome these problems by changing tack and advancing submissions which had not

**Page 24 of [1997] JOL 331 (A)**

been made in the court below.

It was submitted that the mere occurrence of the delays which were said to constitute breaches of contract did not necessarily result in loss to the contractor and that whether or not it did, would and could only be known once the contractor had completed the work and that date was (at the earliest) 6 March 1989 being the date which the engineer certified on 10 April 1990 in the certificate of final delivery as being the date of completion. Until then, so it was contended, there was no debt due either as an objective fact or, if there was, it had to be deemed not to be due by virtue of section 12(3) of the Act because the contractor would not have had knowledge then "of the facts from which the debt arises" nor could it "have acquired it by exercising reasonable care".

The last-mentioned proposition was elaborated and extended by

**Page 25 of [1997] JOL 331 (A)**

the making of submissions relating to the alleged complexity of this building contract and the many vagaries of circumstance and permutations of calculation of sums due both to and by the contractor which potentially attend such a contract. It was suggested that time lost by delay in furnishing drawings and instructions, or in giving access to the site or parts of it, might be made up by quicker future working by the contractor. It was contended that time which might otherwise have been lost because of the delay might have been lost irrespective of the delay because of coterminous inclement weather. The possibility of the contractor advancing certain work in order to avoid wasting time which would otherwise have been lost as a consequence of the delay was also mooted. Time had to be allowed to unfold and the works would have to be completed before it would be known whether or not there was indeed any debt arising from the

**Page 26 of [1997] JOL 331 (A)**

delays which constituted breaches.

In any event, so it was finally argued, it was encumbent on the appellants to establish when prescription commenced to run because that was critical to the special defence of prescription which they had raised and they had failed to place facts before the court from which that date could be determined. They had failed to show either that the breaches *ipso facto* resulted in loss or, if they did, that the contractor knew it or could have become aware of it by exercising reasonable care. Reliance was placed on the decision in *Gericke v Sack* 1978 (1) SA 821 (A) at 826–7 in this connection.

Whether or not that case was decided correctly on that point it is unnecessary to consider in the circumstances of this case. I say so because it was never in issue between the parties that the contractor either knew, or by exercising reasonable care could have known, "of

**Page 27 of [1997] JOL 331 (A)**

the facts from which the debt arises" when the delays occurred. I interpolate to say that when I speak of the facts, I shall assume in the contractor's favour without deciding, that the legislature's reference in section 12(3) to "the facts from which the debt arises" applies both to the fact that a breach of contract has occurred and to the fact that loss has been or would be sustained.

In their special plea the appellants pleaded that Claim D was based on delays and specified when those delays had occurred in 1984, 1985 and 1986; alternatively, they alleged that all the delays occurred prior

to 8 July 1987 by which date the works were completed; in the further alternative they alleged that all the additional costs allegedly incurred by the contractor due to the delays were incurred prior to the end of July 1987; they proceeded to aver that "in the premises any claim (the contractor) may have had was due by the end of July

**Page 28 of [1997] JOL 331 (A)**

1987". This obviously was intended to mean that any debt due to the contractor was due by the end of July 1987.

The contractor's replication to those particular allegations did not amount to a denial of the allegations as to when delays occurred and by when the additional costs had been incurred. It was implicit in the particulars of claim read with the replication that they were not disputed. What was disputed, was that the claim had become prescribed by the end of July 1987. The reasons for that being disputed were set forth in the replication. In summary, they were the existence of unprescribed reciprocal debts which prevented Claim D from becoming prescribed by reason of the provisions of section 12(3) of the Act; an alleged oral agreement on 7 February 1992 to suspend the running of prescription; and an express or tacit admission of liability "during July 1990 and thereafter" which interrupted the

**Page 29 of [1997] JOL 331 (A)**

running of prescription. The conventional denial in the replication of all residual allegations made by appellants can in the circumstances not be fairly regarded as raising any issue relating to a lack of knowledge of the facts giving rise to the debt on the part of the contractor, far less any issue as to whether or not it could by the exercise of reasonable care have acquired knowledge of such facts. Nor does the matter end there. The agreed approach to the court *a quo* to resolve the issue of prescription on the strength of the agreed facts placed before the court is utterly inconsistent with the contractor having intended to raise any issue in that regard. The agreed facts are as silent as the grave in regard to that issue and, if that issue was indeed intended by the contractor to be a live issue which would have to be resolved before the merits of the plea of prescription could be decided, it would have misrepresented to the court that the agreed facts

**Page 30 of [1997] JOL 331 (A)**

would enable it to determine the issue of prescription, because it must have known that they would not. Furthermore, if the contractor had intended that issue to be resolved, it is inconceivable that it would not have insisted upon appropriate facts being included amongst those which were placed before the court by agreement. The inference is inescapable, so it seems to me, that the contractor well knew that any attempt by it to deny that it knew when the delays occurred that it would suffer loss over and above that for which the contract provided, or that it could by the exercise of reasonable care have known that, would be doomed to failure. It is obvious that the contractor must have been aware at the time when they occurred, of the delays of which it complains; if it was not, they could not have had any causative effect upon its operations. As for knowledge of loss, that too was either obvious or ascertainable by exercising reasonable care.

**Page 31 of [1997] JOL 331 (A)**

The nature of the losses allegedly sustained by the contractor as a result of the delays are spelt out in detail in the particulars of claim and they are manifestly losses and expenses of a kind which would obviously be suffered. Counsel for the contractor wisely disavowed any intention of maintaining that the contractor would have to be able to calculate his loss with absolute precision to the last cent before prescription would commence to run against its claim.

I turn to the remaining submissions of counsel for the contractor to which I made reference earlier. The suggestion that lost time might have been made up and rendered financially irrelevant by the contractor speeding up the work and finishing the works by the contractual completion date is fallacious. It requires the contractor to forego the extra profit to which it would have become entitled by finishing early, in order to protect the first appellant from the financial

Page 32 of [1997] JOL 331 (A)

consequences of the first appellant's commission of breaches of contract. Had the breaches not occurred the contract would have been completed even earlier.

The fact that delay may have been accompanied by inclement weather so that delay could not have been said to be the effective cause of loss of construction time can have no possible bearing on the question of when prescription begins to run. In such circumstances there could never be a claim against which prescription could run and that would be obvious at the time the delay was occurring and the inclement weather was being experienced. As for the suggestion that other work might be brought forward to avoid losing or wasting the period during which a delay in furnishing drawings or instructions or in making a part of the site available was being experienced, that too is something which would have had to be done then and there and the

Page 33 of [1997] JOL 331 (A)

financial implications would also have been apparent even if not immediately capable of precise calculation.

In short, vague and nebulous incantations of the complexity surrounding the execution of a large and sophisticated building contract are not sufficient to sustain a contention that a debt arising from damages suffered as a consequence of a breach of contract by the appellants does not become due until the entire contract has run its course. The difficulties postulated by counsel for the contractor lack substance.

For these reasons I conclude that the plea of prescription of Claim D was established. The appeal succeeds with costs, including the costs of two counsel. Orders 3, 4 and 5 issued by the court *a quo* are set aside and the following orders are substituted therefor:

Page 34 of [1997] JOL 331 (A)

> "Plaintiff's Claim D is prescribed and is dismissed".
>
> "The costs of these proceedings, including the costs of two counsel, are to be paid by Plaintiff".

(BOTHA JA, GROSSKOPF JA, VIVIER JA and SCHUTZ JA concurred in the judgment of MARAIS JA.)