UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

JOHN OJWANG' OMOLLO,                        :
                                            :
                    Plaintiff,              :    07 Civ. 9259 (SAS)
                                            :
          - against -                       :
                                            :
CITIBANK, N.A.,                             :
                                            :
                    Defendant.              :
———————————————————— x


**<u>MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS</u>**

## Table of Contents

Page

Table of Authorities .................................................................................................ii

Preliminary Statement ............................................................................................. 1

Facts ........................................................................................................................ 3

Argument ................................................................................................................. 6

I.      THE ACTION IS BARRED BY THE APPLICABLE STATUTES
        OF LIMITATIONS ...................................................................................... 6

                A.      Plaintiff's Fraudulent Inducement Claim ..................................... 7

                B.      Plaintiff's "Duress" Claim............................................................ 8

II.     IF, IN THE ALTERNATIVE, THE ACTION IS NOT BARRED BY
        THE STATUTES OF LIMITATIONS, THE COURT SHOULD DISMISS
        THE ACTION ON THE GROUNDS OF *FORUM NON CONVENIENS*............................ 9

                A.      Plaintiff's Choice of Forum Should be Accorded Little
                        Deference Because He is a Non-Resident .................................. 10

                B.      South Africa Is An Adequate Alternative Forum ....................... 11

                C.      The Private and Public Interest Factors Strongly Favor
                        Dismissal ................................................................................... 12

CONCLUSION ...................................................................................................... 17

KL3 2642375.1

**Table of Authorities**

**Cases**

**Page**

*ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse,*
    652 F. Supp. 1289 (S.D.N.Y. 1987) ................................................................... 11

*Alfadda v. Fenn,*
    159 F.3d 41 (2d Cir. 1998) ........................................................... 12, 14, 15

*Allstate v. Life Ins. Co. v. Linter Group Ltd.,*
    994 F.2d 996 (2d Cir. 1993) ................................................................. 15

*Blimpie Int'l, Inc. v. ICA Menyforetagen AB,*
    No. 96 Civ. 3082, 1997 WL 143907 (S.D.N.Y. Mar. 25, 1997) ........................... 14

*Capital Currency Exch. N.V. v. National Westminster Bank PLC,*
    155 F.3d 603 (2d Cir. 1998) ........................................................ 10, 11 n.8, 13

*Gilstrap v. Radianz Ltd.,*
    443 F. Supp. 2d 474 (S.D.N.Y. 2006),
    *aff'd,* 233 Fed. Appx. 83 (2d Cir. 2007) .............................................. 13

*Global Fin. Corp. v. Triarc Corp.,*
    93 N.Y.2d 525, 693 N.Y.S.2d 479 (1999) .......................................... 6, 7

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) .................................................................. 10, 12

*Hosseiniyar v. Alimehri,*
    No. 2006-09413, 2008 WL 458506 (2d Dep't Feb. 19, 2008) ................................ 8

*Koster v. (American) Lumbermens Mut. Cas. Co.,*
    330 U.S. 518 (1947) ......................................................................... 9

*LaSala v. Bank of Cyprus Pub. Co.,*
    510 F. Supp. 2d 246 (S.D.N.Y. 2007) .................................................. 14, 15

*Lazard Freres & Co. v. Protective Life Ins. Co.,*
    108 F.3d 1531 (2d Cir. 1997) ........................................................... 15

*Matli ex rel. Matli v. Strategic Minerals Corp.,*
    No. 04 Civ. 5555, 2004 WL 2297373 (S.D.N.Y. Oct. 12, 2004) ................................ 12, 14,15

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,*

KL3 2642375.1

85 F. Supp. 2d 282 (S.D.N.Y. 2000),
*aff'd*, 2 Fed. Appx. 109 (2d Cir. 2001) ................................................................. 11

*Otor, S.A. v. Credit Lyonnais, S.A.*,
No 04 Civ. 6978, 2006 WL 2613775 (S.D.N.Y. Sept. 11, 2006) ........................................... 13

*PT United Can Co. v. Crown Cork & Seal Co.*,
138 F.3d 65 (2d Cir. 1998) ................................................................................ 9, 10

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ............................................................................. 10, 11 n.8, 12, 13

*In re Royal Group Techs. Sec. Litig.*,
No. 04 Civ. 9809, 2005 WL 3105341 (S.D.N.Y. Nov. 21, 2005) ........................................... 14

*Scottish Air Int'l, Inc. v. British Caledonian Group*,
81 F.3d 1224 (2d Cir. 1996) ................................................................................. 14

*In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*,
499 F. Supp. 2d 437 (S.D.N.Y. 2007) ................................................................ 9 -10, 10 n.7

*Stuart v. American Cyanamid Co.*,
158 F.3d 622 (2d Cir. 1998) ................................................................................. 6

*Topps Co. v. Cadbury Stani, S.A.I.C.*,
380 F. Supp. 2d 250 (S.D.N.Y. 2005) ..................................................................... 7, 8

*Williams v. Infr Commerc Anstalt*,
131 F. Supp. 2d 451 (S.D.N.Y. 2001) ..................................................................... 6, 7

## **STATUTES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1

N.Y. C.P.L.R. § 202 .................................................................................... 2, 6, 7, 9

N.Y. C.P.L.R. § 213 ........................................................................................ 7, 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

JOHN OJWANG' OMOLLO,                    :
                                        :
                    Plaintiff,          :    07 Civ. 9259 (SAS)
                                        :
        - against -                     :
                                        :
CITIBANK, N.A.,                         :
                                        :
                    Defendant.          :
————————————————————— x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Defendant Citibank, N.A. ("Citibank") respectfully submits this memorandum of law in support of its motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the action is barred by applicable statutes of limitations. In the alternative, defendant moves to dismiss on the grounds of *forum non conveniens*.

### Preliminary Statement

Plaintiff, a *pro se* litigant, who is a citizen of Kenya and current resident of South Africa, was until recently an employee of Citibank's South Africa branch. Plaintiff claims that Citibank (a) fraudulently induced him to enter into an employment contract pursuant to which he transferred from Citibank's Kenya branch to Citibank's South Africa branch and (b) forced him to enter into a subsequent employment contract in South Africa, which eliminated certain benefits he was receiving under the first contract. While Plaintiff's claims are meritless, the Court need not reach the merits of these issues because Plaintiff's claims are barred by the applicable statutes of limitations or, in the alternative, the complaint should be dismissed on the grounds of *forum non conveniens*.

First, where the jurisdiction of a federal court in New York rests upon diversity of citizenship courts generally apply New York's statutes of limitations. However, under New York's "borrowing" statute, CPLR § 202, a nonresident plaintiff suing upon a cause of action that occurred outside of New York must satisfy both the statutes of limitations of New York and of the jurisdiction where the cause of action accrued. Here, Plaintiff, a resident of South Africa is claiming to have been economically injured in South Africa. Thus, his cause of action accrued in South Africa and his claims must have been filed within the applicable New York and South African limitations periods. Because Plaintiff failed to timely file his fraudulent inducement claim under both New York and South African law and failed to timely file his contractual duress claim under South African law, his entire action is time-barred and must be dismissed.

Even if the Court finds that Plaintiff satisfied the relevant limitations periods – which it should not – this action should be dismissed because New York is an inappropriate forum for this dispute. As conceded by Plaintiff throughout his complaint, the underlying events giving rise to Plaintiff's claims all occurred outside of the United States and, hence, virtually all (if not all) relevant witnesses and documentary evidence are located outside of the United States. Indeed, Plaintiff's complaint is rife with names of potentially relevant witnesses – all of whom were employed either in the Kenya or South Africa branches of Citibank. Those witnesses include bank representatives with direct knowledge of the employment contracts at issue and Plaintiff's employment in South Africa. Significantly, as Plaintiff notes in his complaint, some of these witnesses are no longer employment by Citibank, and would not be subject to the Court's subpoena power for trial. Moreover, there would be significant logistical and cost issues throughout the matter if it is adjudicated here, including navigating a discovery process which

would involve collecting the majority of relevant documents from South Africa and potentially using the time-consuming letters rogatory process for conducting depositions in Africa.

Further, because it is highly likely that South African law will govern this entire dispute – indeed, at least one of the contracts at issue explicitly states that South African law applies to the terms of the contract – the Court will be considerably burdened if it adjudicated this matter.  In addition, South Africa's interest in an employment matter between a resident employee and a local corporation employer is far greater than that of New York, which essentially has little, if any, interest in this local dispute.  To hold a jury trial in New York and have the New York community resolve an employment dispute arising entirely out of a South African employment relationship is impractical, inefficient and burdensome.  Further, the fact that Plaintiff chose this forum should be given no deference because (a) Plaintiff is a nonresident and the forum is not convenient for him and (b) Plaintiff has no connection to New York and has clearly engaged in forum-shopping to attempt to take advantage of New York's six year statute of limitations for contract claims.  Finally, South Africa would be an available alternative forum for this dispute (assuming that Plaintiff's claims are not barred by the applicable statute of limitations).  For all of these reasons, if the Court finds that Plaintiff's claims are not untimely, it should dismiss this action on *forum non conveniens* grounds.

## **Facts**[1]

On November 20, 2000, Plaintiff signed an offer letter (the "November 2000 agreement") setting forth the terms and conditions of his employment with the Johannesburg, South Africa branch of Citibank, NA.  (Complaint, App. A).[2]  The November 2000 agreement

---

[1]      For the purposes of this motion only, the facts in the complaint are taken as true.

[2]      Citations to "App." refer to the appendices attached to Plaintiff's complaint.

provides, in relevant part, that "it is anticipated that the South African assignment will last approximately 2 years" and that "the assignment can only be renewed with the agreement of all parties for one (1) additional year, and the maximum period is three (3) years after which you will be expected to return to assignment in Kenya." (*Id.* at 1).

In accordance with the terms of the November 2000 agreement, Plaintiff was provided certain housing benefits as well as education benefits for his family. (*Id.* at 2-3). The November 2000 agreement was signed by bank representatives in the Kenya branch who Plaintiff states are now located in South Africa, London and the Democratic Republic of Congo. (Complaint cover sheet at 3C).[3] Significantly, the November 2000 agreement also provides that "[t]he agreement rising from [Plaintiff's] acceptance of this offer letter and terms and conditions stated in the preceding paragraph above shall be governed by and construed in accordance with the Laws of South Africa." (Complaint, App. at 5). In accordance with the agreement Plaintiff commenced work as a Credit Administration Manager in the South Africa Citibank branch on February 1, 2001. (Complaint at 2). Plaintiff alleges that, despite the plain language of the agreements regarding the length of his assignment in South Africa, he was told by his supervisor in Kenya that he would work in South Africa "longer than the contracts stipulated." (*Id.* at 1). He claims that in reliance upon his supervisor's comments, his wife resigned from her employment in Kenya and that he moved his children to South African schools. (*Id.*)

On September 17, 2002, plaintiff entered into another agreement with Citibank, NA, South Africa (the "September 2002 agreement") pursuant to which he agreed to become a localized employee in South Africa, and, among other things, forego the education and housing benefits provided under the November 2000 agreement. (Complaint, App. B). The September

---

[3]    Citations to the "Complaint cover sheet" refer to the form sheets at the front of Plaintiff's complaint.  Otherwise, citations to the "Complaint" refer to Plaintiff's handwritten complaint.

4

2002 agreement was signed by the Head of Human Resources in the South Africa branch. (*Id.* at 9). Upon information and belief, Plaintiff worked in the South Africa branch until February 2008, when he resigned. In this action, Plaintiff claims that he signed the September 2002 agreement "under duress" because if he did not, he would have been forced to resign at the end of the year. (Complaint at 2). According to Plaintiff, he was financially disadvantaged by the removal of housing and education benefits as he continued to live in South Africa with his family. (*Id.* at 2-3).

Plaintiff claims that he continued to pursue the benefits he forfeited when he signed the September 2002 agreement. For example, he claims that he had conversations with the Head of Human Resources in South Africa, Susan Robertson, in which he sought "[t]o be paid the amounts lost when the contracts were changed," (*id.* at 4), but that he never received such amounts. (*Id.* at 4). He further claims to have had conversations with his "immediate supervisor" and the former "CEO" of Citibank, South Africa about his situation. (*Id.* at 4). Plaintiff does not allege that any events giving rise to his claims occurred in New York. To the contrary, his complaint explicitly states that all of the events occurred in South Africa. (Complaint cover sheet at 3A). This is consistent with the fact that Plaintiff was never employed by Citibank in New York and that he only worked in the Kenya and South Africa branches.

According to the complaint, and the exhibits attached thereto, Plaintiff retained New York counsel at least as early as March 2005 and threatened South African bank representatives with a lawsuit in New York. (Complaint at 3 and Apps. G).[4] Significantly, such correspondence also reveals that his New York attorney withdrew from the matter because it was such counsel's opinion that Plaintiff's action in New York would be dismissed on the grounds on

---

[4]     There are two appendices to the complaint labeled "G." This citation refers to both appendices.

*forum non conveniens.* (Complaint, App. I). Further, Plaintiff's counsel in New York

encouraged him *by at least June 20, 2005* to initiate an action in South Africa. (*Id.*). Plaintiff

never commenced an action in South Africa. Rather, against the advice of his New York

counsel, Plaintiff commenced this action on or about September 20, 2007.

### Argument

### I.

### THE ACTION IS BARRED BY THE APPLICABLE
### STATUTES OF LIMITATIONS

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in

New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v.*

*American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). While New York courts generally

apply New York's statutes of limitations, a "notable exception" to this general rule is New

York's "borrowing" statute, CPLR § 202. *Williams v. Infra Commerc Anstalt*, 131 F. Supp. 2d

451, 455 (S.D.N.Y. 2001); *see also Stuart*, 158 F.3d at 627. CPLR § 202 states:

> *An action based upon a cause of action accruing without the state*
> *cannot be commenced after the expiration of the time limited by*
> *the laws of either the state or the place without the state where the*
> *cause of action accrued,* except that where the cause of action
> accrued in favor of a resident of the state the time limited by the
> laws of the state shall apply.

CPLR § 202 (McKinney) (emphasis added). Thus, when a nonresident plaintiff brings a claim

that arose outside of New York, the court must apply the shorter limitations period between New

York or the forum where the cause of action accrued. *See Stuart*, 158 F.3d at 627. This

provision "prevents nonresidents from shopping in New York for a favorable [s]tatute of

[l]imitations." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528, 693 N.Y.S.2d 479, 480-

81 (1999). If the shorter limitations period is not met, the claim must be dismissed.

6

For the purposes of CPLR § 202, a cause of action accrues where the injury occurred. *See id.* The New York Court of Appeals has held that where an alleged injury is "purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Global Fin. Corp.*, 93 N.Y.2d at 529, 693 N.Y.S.2d at 482 (citing cases); *see also Williams*, 131 F. Supp. 2d at 455. Because all of Plaintiff's alleged economic losses occurred while he was living and employed in South Africa, the Court must evaluate the timeliness of Plaintiff's claims under the statutes of limitations of New York and South Africa. Under such an analysis, both of Plaintiff's claims are time-barred and should be dismissed.

      A.     Plaintiff's Fraudulent Inducement Claim

First, Plaintiff claims that he was fraudulently induced into entering the November 2000 agreement. Despite the plain language of the contract stating that the parties anticipated his South African assignment to span only two years and that the assignment could "only be renewed with the agreement of the parties" (Complaint, App. A. at 1), Plaintiff claims that he was told by his supervisor in Kenya that he would work in South Africa "longer than the contracts stipulated." (Complaint at 1). He claims that in reliance upon his supervisor's comments, his wife resigned from her employment in Kenya and that he moved his children to South African schools. (*Id.*).

This claim is untimely under the statutes of limitations of both New York and South Africa. Specifically, under New York law, a fraudulent inducement claim must be filed within six years from the commission of the fraud or two years from discovery of the fraud, whichever is longer. CPLR § 213(8); *see also Topps Co. v. Cadbury Stani, S.A.I.C.*, 380 F. Supp. 2d 250, 255 (S.D.N.Y. 2005). Thus, if it is true, as Plaintiff claims, that Plaintiff's supervisor made fraudulent representations to Plaintiff at the time the November 2000 agreement was signed, Plaintiff's fraudulent inducement claim would have expired in November 2006 since

7

that is the longest period Plaintiff would have had to file such a claim.[5]  While the Court need not

evaluate the timeliness of Plaintiff's claim under South African law because Plaintiff failed to

satisfy New York's limitations period, Plaintiff's claim is similarly barred the relevant South

African limitations period because claims for fraudulent inducement into a contract under South

African law must be initiated within three years from the date the alleged damages were

discovered.  *See* Declaration of Gert Johannes Petrus Olivier ("Olivier Decl."), dated March 11,

2008, ¶¶ 11.7.2-11.7.4, 12.1.  Accordingly, Plaintiff's fraudulent inducement claim under South

African law would have expired on September 17, 2005.  *See id.* ¶¶ 8, 12.2.  Because Plaintiff

failed to file a complaint until September 2007, his fraudulent inducement claims must be

dismissed.

     B.     Plaintiff's "Duress" Claim

     Second, Plaintiff claims that he entered into the September 2002 contract "under

duress."  While not explicitly stated in the complaint, Plaintiff's claim can best be interpreted as

one for rescission of contract since he appears to seek reinstatement of the benefits that were

available to him pursuant to his November 2000 agreement.  While Plaintiff's claim may be

timely under New York's six year statute of limitations for such contract claims, CPLR § 213(1);

*see, e.g., Hosseiniyar v. Alimehri*, No. 2006-09413, 2008 WL 458506, at *1 (2d Dep't Feb. 19,

2008) (rescission claims have six year statute of limitations), it is certainly not timely under

South African law.  Indeed, a claim for rescission of contract due to duress is a claim based on

delict which, under South African law, must be brought – at the latest – within three years from

the date the alleged damages arose.  *See* Olivier Decl. ¶¶ 11.2.3, 11.7.2-11.7.4, 12.1.  Here, the

---

[5]     The latest Plaintiff could have "discovered" the alleged fraud was September 2002 when
he entered into the September 2002 agreement and forfeited the relevant benefits provided by the
prior contract.  Thus, under this discovery rule, Plaintiff would have had to file his claim by
September 2004.

contract Plaintiff claims he was forced to enter was signed on September 17, 2002. At that time, Plaintiff knew he was forfeiting the benefits he now seeks. *See id.* ¶ 12.2. Because Plaintiff failed to initiate a lawsuit by September 17, 2005 – he did not do so until September 2007, more than two years after the claim expired – his duress claim must also be dismissed in accordance with CPLR § 202.[6]

## II.

## IF, IN THE ALTERNATIVE, THE ACTION IS NOT BARRED BY THE STATUTES OF LIMITATIONS, THE COURT SHOULD DISMISS THE ACTION ON THE GROUNDS OF *FORUM NON CONVENIENS*

If the Court finds that this action is not barred by the applicable statutes of limitations, it should dismiss the action on the grounds of *forum non conveniens*. The doctrine of *forum non conveniens* permits a Court to dismiss an action even if jurisdiction is proper "where trial will best serve the convenience of the parties and the ends of justice" in another forum. *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527 (1947). In conducting a *forum non conveniens* analysis, courts: (i) consider the degree of deference due to the plaintiff's choice of forum; (ii) assess whether an "available" and "adequate" alternative forum exists; and (iii) balance the competing private interests of the parties and the public interests of the potential fora. *See PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73-74 (2d Cir. 1998); *In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000,* 499 F. Supp. 2d 437, 441 (S.D.N.Y.

---

[6]     Plaintiff appears to suggest that defendant caused the statute of limitations to lapse by not promptly responding to issues raised internally by Plaintiff. (Complaint at 4). Plaintiff's attempt to place the blame on anyone but himself falls flat because (a) Plaintiff knew about his alleged economic hardships when he signed the September 2002 agreement and therefore could have filed a claim as early as September 2002 when his contractual benefits changed and (b) Plaintiff was advised by New York counsel as early as June 2005 that he should file suit in South Africa and not in New York. (Complaint, App. I). Indeed, Plaintiff's counsel specifically warned Plaintiff that if he initiated suit in New York he risked dismissal on the grounds of *forum non conveniens.* (*Id.*). Plaintiff failed to heed such advice, allowed his claims expire in South Africa, and then waited another two years to file suit in New York.

9

2007). Because plaintiff's choice of forum should be given little deference due to his non-United

States residency, South Africa is an available and adequate alternative forum for this dispute (if

the Court finds that the claims are not barred by the statute of limitations) and the balance of

private and public factors weigh heavily in favor of South Africa as the appropriate forum, the

Court should dismiss the complaint.

> A.    Plaintiff's Choice of Forum Should be Accorded
>        Little Deference Because He is a Non-Resident

Whereas a plaintiff's choice of forum is generally accorded "great weight"

because the law presumes that the forum was chosen for its convenience, *Gulf Oil Corp. v.*

*Gilbert,* 330 U.S. 501, 508-09 (1947), no such presumption is warranted here because Plaintiff is

not a citizen or even a resident of the United States. These facts alone are sufficient to rebut any

presumption in favor of Plaintiffs' choice of forum. As the Supreme Court has stated:

> [w]hen the home forum has been chosen, it is reasonable to assume
> that this choice is convenient. When the plaintiff is foreign,
> however, this assumption is much less reasonable. <u>Because the
> central purpose of any *forum non conveniens* inquiry is to ensure
> that the trial is convenient, a foreign plaintiff's choice deserves less
> deference.</u>

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981) (emphasis added); *see also Capital*

*Currency Exch. N.V. v. National Westminster Bank PLC,* 155 F.3d 603, 609 (2d Cir. 1998) ("The

presumption in favor of plaintiffs' chosen forum . . . is weaker 'when the plaintiff or real parties

in interest are foreign.'"); *PT United Can Co.*, 138 F.3d at 74 ("In general, a plaintiff's choice of

forum is to be respected, but a non-U.S. plaintiff's choice warrants less deference."). Here,

Plaintiff is a citizen of Kenya and a current resident of South Africa. Accordingly, his choice of

New York as the forum for his dispute should be given little deference.[7]

---

[7]    In addition, where "indicia of forum shopping are present," courts may give less
deference to plaintiff's choice of forum. *In re Ski Train*, 499 F. Supp. 2d at 442. Plaintiff admits

### B.     South Africa Is An Adequate Alternative Forum

Second, a Court conducting a *forum non conveniens* analysis must determine whether an alternative forum is both "available" and "adequate." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 304-05 (S.D.N.Y. 2000), *aff'd*, 2 Fed. Appx. 109 (2d Cir. 2001). A forum is "available" and "adequate" if defendant is amenable to jurisdiction there and if it permits litigation of the subject matter of the action. *Id.* An "available" forum is deemed "inadequate" only in "rare circumstances." *ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse,* 652 F. Supp. 1289, 1292 (S.D.N.Y. 1987); *see also Piper Aircraft Co.* 454 U.S. at 251.

As discussed above, it is defendants' position that Plaintiffs' claims are barred by the statute of limitations in South Africa. However, if the Court finds that such claims are not barred, South Africa is clearly an "available" and "adequate" alternative forum – in fact, it is the best forum for the claims in this action because that is where the relevant branch of Citibank, N.A. – Plaintiff's former employer – is located and is subject to jurisdiction. *See* Olivier Decl. ¶¶ 9-10, 13.1. Specifically, the Witwatersrand Local Division of the High Court, with its seat in Johannesburg, South Africa, would have jurisdiction over Citibank, N.A. because the company is located and doing business there through its South African branch office. *See id.* ¶¶ 10, 13.1.[8] In

---

that he believed that his claims were barred by the relevant statute of limitations periods in South Africa. (Complaint at 5). Plaintiff has engaged in forum-shopping to try to revive untimely claims here in New York. Such conduct should be rejected by the Court.

[8]      It is well-established that dismissing an action is warranted on *forum non conveniens* grounds even where the foreign forum would not be able to hear all of the claims that Plaintiff could bring in the federal courts in the United States or the law applicable in the alternative forum is less favorable to Plaintiff's chance of recovery. *See, e.g., Capital Currency Exchange*, 155 F.3d at 611 (holding that even though plaintiffs may not be able to recover in England on some of their claims, "the essential subject matter of the dispute can be adequately addressed by an English court."); *Piper Aircraft*, 454 U.S. at 255.

addition, assuming Plaintiff's claims were not time-barred, the High Court of South Africa could

hear his fraudulent inducement and duress claims since the alleged damages arising out of

Plaintiff's causes of action arose in South Africa. *See id.* ¶¶ 9, 13.1. Further, this court has

previously recognized the adequacy and legitimacy of South African courts to resolve civil

claims. *See Matli ex rel. Matli v. Strategic Minerals Corp.*, No. 04 Civ. 5555, 2004 WL

2297373, at *1-2 (S.D.N.Y. Oct. 12, 2004). Accordingly, assuming Plaintiff's claims were not

time-barred, South Africa would be an alternative available forum for this dispute.

C.    The Private and Public Interest Factors Strongly Favor Dismissal

Where, as here, an available adequate alternative forum exists, the court must then

weigh the public and private interests identified in *Gilbert,* 330 U.S. at 508-09, to determine

which forum will be most convenient and 'will best serve the ends of justice.'" *Alfadda v. Fenn,*

159 F.3d 41, 45-46 (2d Cir. 1998) (citation omitted). The relevant private interest factors

include:

> (1) ease of access to evidence; (2) the cost for witnesses to attend
> trial; (3) the availability of compulsory process; and (4) other
> factors that might shorten trial or make it less expensive.

*Id.* at 46 (relying on factors set forth in *Gilbert*). The relevant public interest factors include:

> (1) having local disputes settled locally; (2) avoiding problems of
> applying foreign law; and (3) avoiding burdening jurors with cases
> that have no impact on their community.

*Id.* In general, dismissal is warranted where "trial in the plaintiff's chosen forum imposes a

heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific

reasons of convenience supporting his choice." *Piper Aircraft Co.,* 454 U.S. at 249.

The private factors weigh heavily in favor of dismissal. Plaintiff resides in South

Africa and his former employer, Citibank, South Africa (the true party in interest) is located in

South Africa. Thus, virtually all – if not all – of the relevant witnesses are located outside of

12

New York. Indeed, Plaintiff admits that all the witnesses to the contracts at issue and the other

bank representatives familiar with his employment are located in Kenya, South Africa, Congo or

London. (Complaint cover sheet at 3C). These witnesses could testify about the terms of the

contract, including the housing and education benefits, as well as the parties' intent upon

entering into the contracts and whether the parties had any discussions outside of the contracts'

written terms. Further, Plaintiff names other potential witnesses in this action including the Head

of HR in South Africa, Plaintiff's "immediate supervisor," and the "CEO of Citigroup South

Africa" – all of whom are located in South Africa. (Complaint at 3-4). Courts have routinely

found that the presence of the majority of witnesses in a foreign forum weighs in favor of

dismissal. *See, e.g., Otor, S.A. v. Credit Lyonnais, S.A.*, No 04 Civ. 6978, 2006 WL 2613775, at

*4 (S.D.N.Y. Sept. 11, 2006) (concluding that it would be "extremely inconvenient and costly

for the parties to litigate this dispute in New York" where, among other things, "almost all of the

potential witnesses in this case reside in France or elsewhere in Europe"); *Gilstrap v. Radianz

Ltd.*, 443 F. Supp. 2d 474, 488 (S.D.N.Y. 2006) (considering cost to defendant to produce

witnesses within its control and difficulty of letters rogatory process to obtain deposition

testimony abroad), *aff'd*, 233 Fed. Appx. 83 (2d Cir. 2007).

      Moreover, Plaintiff alleges that a number of individuals who would have relevant

testimony have left the bank, making them third party witnesses beyond the subpoena power of

the Court. The potential unavailability of these witnesses in a trial before this Court is a

significant factor favoring dismissal. *See Piper Aircraft,* 454 U.S. at 258 (defendant's showing

that "crucial witnesses are located beyond the reach of compulsory process" supported trial

court's dismissal on grounds of *forum non conveniens*); *Capital Currency Exch.,* 155 F.3d at

611-12 (affirming dismissal on *forum non conveniens* grounds in favor of litigation in England

where non-party witnesses were "crucial to a trial of plaintiffs' claims," and "not subject to compulsory process in the United States"); *Scottish Air Int'l, Inc. v. British Caledonian Group*, 81 F.3d 1224, 1232-33 (2d Cir. 1996) (trial court did not err in dismissing action on *forum non conveniens* grounds where most of the witnesses were located in Great Britain and there would be difficulty and costs in obtaining their testimony "whether they were willing to appear or not"); *In re Royal Group Techs. Sec. Litig.*, No. 04 Civ. 9809, 2005 WL 3105341, at *3 (S.D.N.Y. Nov. 21, 2005) (dismissing action on *forum non conveniens* grounds in large part because key non-party witnesses could not be compelled to testify in the Southern District of New York).

In addition, because all of the relevant events claimed by Plaintiff occurred outside of the United States, including the execution of the contracts at issue, it is highly likely that virtually all of the documents would be collected from outside the United States. This weighs heavily in favor of dismissal. *See LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 258-59 (S.D.N.Y. 2007); *In re Royal Group Techs.*, 2005 WL 3105341, at *2 (location of documents and witnesses in Canada weighed in favor of dismissal despite the fact that documents could be transported to New York); *Matli*, 2004 WL 2297373, at *1 (important factor in dismissing matter on grounds of *forum non conveniens* was that the "great majority of the relevant evidence" was located in foreign forum); *Alfadda*, 159 F.3d at 48 (location of documentary evidence in foreign country weighed in favor of dismissal on grounds of *forum non conveniens*); *Blimpie Int'l, Inc. v. ICA Menyforetagen AB*, No. 96 Civ. 3082, 1997 WL 143907, at *7 (S.D.N.Y. Mar. 25, 1997) (fact that "access to the bulk of the proof on Plaintiff's claims would be easier in Sweden than in New York" weighed in favor of dismissal on *forum non conveniens* grounds). Undoubtedly, it would be burdensome and costly to have all of the relevant documents transported from Africa to the United States.

14

The public factors also weigh heavily in favor of dismissal. First, the November 2000 agreement explicitly states that South African law will apply to issues arising out of the dispute. (Complaint, Appendix A at 5). Moreover, it is highly likely that South African law will govern the application of the September 2002 agreement – the contract under which Plaintiff claims he forfeited his education and housing benefits – which was executed in South Africa by Plaintiff and bank representatives in the South African branch of Citibank. *See Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F. 3d 1531, 1539 (2d Cir. 1997) (noting that under New York's choice of law rules for contract cases, courts will consider where the contract was executed, negotiated, performed and where the parties to the contract are domiciled). As one federal court has noted, "[t]he mere likelihood of the application of foreign law weighs in favor of dismissal." *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d at 263. Should the Court adjudicate this action, it will be extremely burdened in applying South African law. *See Matli*, 2004 WL 2297373, at *2 (stating that"[t]he burden on the Court of applying South African law, in a case where the great majority of evidence is located in South Africa, would be considerable.").

Second, whereas South Africa has a strong interest in this action, New York has little – if any – interest in this employment dispute arising from an individual's employment in South Africa. *See id.* (holding that South Africa is the "only community with an interest" in a "purely South African matter."). Indeed, this action will focus on two employment contracts between a South African employee and an entity doing business in South Africa. South Africa clearly has the greater interest in this matter. *See Alfadda*, 159 F.3d at 46 (France's interest in litigating a case concerning the conduct of a French bank weighed "heavily against the United States as a forum"); *Allstate v. Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir.

15

1993) (Australia had a "strong local interest" in trying a case involving allegations of fraud by Australian corporations). Similarly, this matter would unfairly burden the jurors in New York who would have to preside over a matter which has no impact on their community.

In sum, a non-resident Plaintiff has commenced this lawsuit in New York, despite the fact that all of the events giving rise to the lawsuit occurred in Africa, virtually all, if not all, of the relevant witnesses are located outside of New York, the great majority of documentary evidence is located outside of New York, and South African law will likely apply to the entire dispute. Accordingly, if the claims are not barred by the applicable statutes of limitations, this Court should dismiss the action on *forum non conveniens* grounds.

KL3 2642375.1

## CONCLUSION

For all of these reasons, defendant respectfully requests that the Court dismiss, with prejudice, all of the claims that have been asserted against it.


Dated:  New York, New York
        March 12, 2008

                                    Kramer Levin Naftalis & Frankel LLP


                                    By:_____s/Rachel M. Manne_____
                                         Kevin B. Leblang (KL-3183)
                                         Rachel M. Manne (RM-7151)

                                    1177 Avenue of the Americas
                                    New York, New York  10022
                                    (212) 715-9100
                                    Attorneys for Defendant Citibank, N.A.

Of Counsel:
Eugene V. Clark, Esq.
Managing Director & Deputy General Counsel
Citigroup Global Markets Inc.

KL3 2642375.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN OJWANG' OMOLLO,

               Plaintiff,

- against -

CITIBANK, N.A.,

               Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

---

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
*Attorneys for Defendant Citibank, N.A.*

1177 Avenue of the Americas  New York, New York  10036
(212) 715-9100

*All communications should be referred to:*
Kevin B. Leblang
Rachel M. Manne