**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------- X
JOHN OJWANG' OMOLLO,

                   **Plaintiff,**

    - against -

 CITIBANK, N.A.,

                 **Defendant.**
------------------------------------------------- X
SHIRA A. SCHEINDLIN, U.S.D.J.:

**MEMORANDUM**
**OPINION AND ORDER**

**07 Civ. 9259 (SAS)**

## I.    INTRODUCTION

Plaintiff John Ojwang' Omollo, a citizen of Kenya, is employed by Citibank in South Africa. Omollo asserts that he was fraudulently induced to enter into an employment contract and later coerced into a second contract. Citibank moves to dismiss on the grounds that the statute of limitations on his claim has expired and on the basis of *forum non conveniens*. For the reasons stated below, defendant's motion is granted.

## II.    BACKGROUND

### A.    Facts[1]

---

[1]    The facts in this section are taken from plaintiff's Complaint, documents appended to the Complaint, and moving papers, and are assumed to be true for purposes of this motion.

Omollo joined Citibank's Kenya branch as Credit Administration Assistant in December of 1995. In late 2000, his unit relocated to Johannesburg, South Africa. Omollo originally planned to relocate alone, leaving his wife and children in Kenya, but changed his mind after he was told by Citibank that it would pay his family's housing and school tuition costs. Additionally, because his unit was relocating, he was told that he would stay in South Africa for longer than the period stipulated by the contract.[2]

On November 30, 2000, Omollo signed a new employment contract (the "2000 Contract") for the position of Credit Administration Manager in South Africa.[3] The 2000 Contract provided that if "suitable performance standards" were maintained, the job term would be two years with the possibility of one-year renewals. It further provided that the maximum period of renewal was "three (3) years after which [Omollo would] be expected to return to an assignment in Kenya."[4] Under the terms of the 2000 Contract, Omollo was expected to move to South Africa with his wife and three children and was provided housing and utilities "for the first three years" and tuition for his children "for a maximum of

---

[2]    *See* Statement ("Stmt.") at 1, App. C to Complaint ("Compl.").

[3]    *See* 11/30/00 Contract, App. A to Compl.

[4]    *Id.*

two years." If Omollo "accept[ed] a permanent position in [South Africa], the housing and education allowances [would] be phased out slowly to facilitate localization." The 2000 Contract provides that it "shall be governed by and construed in accordance with the Laws of South Africa." Consequently, Omollo's wife left her job, the children withdrew from their schools, and the family relocated to Johannesburg.

By letter dated September 17, 2002, Citibank offered to change the terms of Omollo's employment (the "2002 Letter"). The 2002 Letter provided that his employment would terminate in two years and that Citibank would no longer provide him and his family with housing and education benefits.[5] It was styled as a voluntary modification to the 2000 Contract and bears Omollo's signature. Omollo asserts that he was told that if he did not agree to the modifications set forth in the 2002 Letter, he would not be offered a new contract when the 2002 Contract expired.[6]

In October of 2004, after viewing a company-sponsored tape of Citibank CEO Charles Prince exhorting employees to raise any complaints

---

[5]     *See* 9/17/02 Letter from Pam Sacree, Head of Human Resources at Citibank, to Omollo, App. B to Compl.

[6]     *See* Stmt. at 2.

3

regarding their employment, Omollo wrote Prince a letter about the change in his benefits. After several months passed without a response, he contacted an attorney in New York. The attorney, Michael Atadika, corresponded with Citibank regarding Omollo's complaints. Citibank informed Atadika that the United States courts would be an improper forum and reminded him that knowingly filing suit in an improper forum is sanctionable.[7] Atadika sent a response to Citibank explaining the merits of the claim, and then advised Omollo that he should pursue his case in South Africa, not New York.[8]

On September 6, 2005, Omollo met with Citibank's local director of Human Resources, Sue Robertson, who offered Omollo three options: (i) to be paid the lost amounts under the original contract; (ii) to have the old contract reinstated; and (iii) to be repatriated to Kenya. Omollo chose the first option and provided Citibank with an estimate of his losses, which he calculated to be $840,000.[9] By letter dated September 26, 2005, Citibank informed Omollo that

---

[7]    *See* 3/31/05 Letter from Richard N. Papper, Vice President and Senior Litigation Counsel, Emerging Markets, Citibank, to Michael Atadika, plaintiff's former counsel, App. G to Compl.

[8]    *See* Stmt. at 3; 6/21/05 Email from Atadika to Omollo, App. I to Compl.

[9]    *See* 9/9/05 Memo from Omollo to Sue Robertson, local director of Human Resources, Citibank, App. E to Compl.

4

because his proposal demonstrated an "obstructive approach," it was rejected.[10]
Further, he was told that "[t]he meeting was not a settlement meeting as in our
view you do not have a claim in terms of South African law."[11]  Omollo requested
a follow-up meeting, but his request was denied.  Citibank's letter also observed
that Omollo's claim was barred by South Africa's statute of limitations.[12]  Omollo
now alleges that these discussions were intended to delay his pursuit of the claims
until the statute of limitations expired.[13]

Omollo continued to raise his concerns with his superiors, and his
supervisor asked whether an appointment as director of the South African Credit
Risk Management Department would be sufficient redress.  He responded that it
would.  However, Citibank did not appoint Omollo to head the department.  After
some time, Omollo was offered the number-two spot at the department, but this
was never confirmed in writing.  Since that time, Omollo has received undeserved
negative performance reviews and reduced compensation as compared to his
peers.  His superiors at Citibank have also tried to persuade him to drop the

---

[10]    *See* 9/26/05 Letter from Robertson to Omollo, App. E to Compl.

[11]    *Id.*

[12]    *See* 9/27/05 Letter from Robertson to Omollo, App. E to Compl.

[13]    *See* Plaintiff's Response to Defendant's Memorandum of Law on
Motion to Dismiss at 1.

lawsuit.[14]

## B.    Procedure

On September 20, 2007, Omollo filed the instant action.  Defendant

now asserts that the applicable statute of limitations has expired, and in addition

moves to dismiss on the ground of forum non conveniens.

## III.   APPLICABLE LAW

### A.    Motion to Dismiss

When deciding a defendant's motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6), the court must "accept as true all of the factual

allegations contained in the complaint"[15] and "draw all inferences in the light most

favorable to the non-moving party."[16]  Nevertheless, the court need not accord

"[l]egal conclusions, deductions or opinions couched as factual allegations . . . a

presumption of truthfulness."[17]

In deciding a motion to dismiss, the court is not limited to the face of

---

[14]    *See* Stmt. at 6.

[15]    *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1975 (2007) (quotation
marks omitted).  *Accord In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d
Cir. 2007).

[16]    *In re NYSE Specialists*, 503 F.3d at 95.

[17]    *Id.* (quotation marks omitted).

6

the complaint, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[18]  However, "before materials outside the record may become the basis for a dismissal . . . it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[19]

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[20]  To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[21]  Although the complaint need not provide "detailed factual allegations,"[22] it must "amplify a claim with some factual allegations . . . to render the claim *plausible*."[23]  The standard is no longer that a

---

[18]    *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[19]    *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[20]    *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[21]    *See Bell Atl.*, 127 S. Ct. at 1970.

[22]    *Id.* at 1964.  *Accord ATSI*, 493 F.3d at 98 n.2.

[23]    *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

complaint can be dismissed only if there us "no set of facts" that plaintiff could prove "which would entitle him to relief."[24]  Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"[25]

## B.    Statute of Limitations

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations."[26]  New York's borrowing statute requires a court to apply the limitation period of the foreign jurisdiction even if "jurisdiction is unobtainable over a defendant in the foreign jurisdiction."[27]  New York courts interpreting the

---

[24]    *Bell Atl.*, 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45-46 (1957)). *Accord id.* ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

[25]    *ATSI*, 493 F.3d at 98 (quoting *Bell Atl.*, 127 S. Ct. at 1965).

[26]    *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) (citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 108-09 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

[27]    *Insurance Co. of N. Am. v. ABB Power Generation*, 91 N.Y.2d 180, 180 (1997). *See also* New York Civil Practice Law and Rules § 202 ("An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.)"

borrowing statute hold that the cause of action accrues in the place of the injury, and where the "'injury is purely economic, the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss.'"[28]

In borrowing a foreign statute of limitations, a court must apply all extensions and tolls that are applicable in that state. When a defendant attempts to use the statute of limitations as an affirmative defense, the defendant "bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued."[29] If the defendant meets this burden, then the plaintiff has the burden to show that the limitations period should be tolled.[30] A motion to dismiss on the basis that a claim is time-barred "may only be granted when the allegations of the complaint make clear that the claim is barred by the limitations period."[31]

## C.    *Forum Non Conveniens*

---

[28]     *Cantor Fitzgerald Inc. v. Lutnick,* 313 F.3d 704, 710 (2d Cir. 2002) (quoting *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999)).

[29]     *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (citing *Hoosac Valley Farmers Exch. v. AG Assets, Inc.*, 563 N.Y.S.2d 954, 955 (3d Dep't 1990)).

[30]     *See id.* (citing *Waters v. Saratoga Springs, Inc. v. State*, 498 N.Y.S.2d 196, 199 (3d Dep't 1986)).

[31]     *Dutton v. Glass*, No. 04 Civ. 3496, 2005 WL 146503, at *1 (S.D.N.Y. Jan. 20, 2005) (quotation marks and citation omitted).

"*Forum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim."[32]  Courts may decline to exercise jurisdiction under this doctrine when it is determined that, weighing "relative advantages and obstacles to fair trial" in the alternative fora and practical considerations of which forum will "make trial of a case [more] easy, expeditious and inexpensive," "the balance is strongly in favor" of the defendant's request for dismissal in favor of a more convenient forum.[33]  However, "a case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute."[34]  Thus, "an adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum."[35]

In deciding whether to dismiss on this ground, courts in this Circuit undertake a three-step analysis.  First, courts determine the degree of deference

---

[32]    *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (quotation marks omitted).

[33]    *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

[34]    *Norex Petroleum Ltd. v. Access Indus.*, 416 F.3d 146, 159 (2d Cir. 2005).

[35]    *Bank of Credit & Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001).

due the plaintiff's choice of forum.[36]  Next, courts examine whether there is an adequate alternative forum for the dispute.[37]  Finally, courts engage in a balanced assessment of the competing private interests of the parties in the choice of forum, and the public interests of the alternative fora under consideration.[38]  Throughout, the defendant bears the burden of showing that *each* stage of the analysis "tilt[s] strongly in favor of trial in the foreign forum."[39]  The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[40]

### 1.    The Degree of Deference Accorded a Plaintiff's Choice of Forum

"Any review of a *forum non conveniens* motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'"[41]  However, the strength

---

[36]    *See Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*).

[37]    *See id.*

[38]    *See id.* at 73-74.

[39]    *Wiwa*, 226 F.3d at 108 (emphasis added).  *Accord P.T. United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).

[40]    *Iragorri*, 274 F.3d at 74-75.

[41]    *Norex Petroleum Ltd. v. Access Indus.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

of this presumption and the degree of deference due the plaintiff's selection
"var[y] with the circumstances."[42]  The degree of deference to be accorded the
plaintiff's choice of forum is not determinative of the final outcome; rather, it
merely re-calibrates the scales for the remaining two steps of the analysis.[43]
"[T]he greater the degree of deference to which the plaintiff's choice of forum is
entitled, the stronger a showing of inconvenience the defendant must make to
prevail in securing *forum non conveniens* dismissal."[44]  Conversely, the less
deference is granted the plaintiff's choice, "the easier it becomes for the defendant
to succeed on a forum non conveniens motion by showing that convenience would
be better served by litigating in another country's courts."[45]

A "plaintiff's choice of forum is generally entitled to great deference
when the plaintiff has sued in the plaintiff's home forum."[46]  The choice of a
United States forum by a foreign plaintiff is entitled to less deference.[47]  "The

---

[42]    *Iragorri*, 274 F.3d at 71.

[43]    *See id.* at 73-74.

[44]    *Id.* at 74.

[45]    *Id.* at 72.

[46]    *Piper Aircraft*, 454 U.S. at 255.

[47]    *See id.* at 255-56.

reason great deference is generally afforded a plaintiff's choice of its home forum 'is [that] it is presumed to be convenient.'"[48]

A court must, however, consider whether the plaintiff's choice of forum appears to be "motivated by desire to impose tactical disadvantage on the defendant."[49] Where there are indicia of forum shopping, the presumption in favor of the plaintiff's choice of forum "may not apply, either at all or with full force."[50] Indicia of forum shopping may include: "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case . . . [and] the inconvenience and expense to the defendant resulting from litigation in that forum."[51]

A court may accord diminished deference to a plaintiff's choice of forum where a plaintiff voluntarily enters into a transaction outside the United States, and "the cause of action does not have significant ties to the plaintiff's home forum."[52] A court will determine whether, in the "particular circumstances," the plaintiff had the "expectation . . . that any litigation arising from [the

---

[48]    *Norex Petroleum*, 416 F.3d at 154 (quoting *Iragorri*, 274 F.3d at 71).

[49]    *Iragorri*, 274 F.3d at 73.

[50]    *Norex Petroleum*, 416 F.3d at 154.

[51]    *Iragorri*, 274 F.3d at 72. *Accord Norex Petroleum*, 416 F.3d at 155.

[52]    *Carey v. Bayerische Hypo-Und Vereinsbank, A.G.,* 370 F.3d 234, 237 (2d Cir. 2004).

transaction] will be conducted " in the foreign jurisdiction.[53]

## 2.    Adequacy of the Alternate Forum

After determining the appropriate degree of deference, "the court must consider whether an adequate alternative forum exists."[54]  The movant bears the burden to demonstrate the adequacy of the alternate forum.[55]  "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction.  In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied."[56]  The mere fact that the substantive law in the alternative forum is less favorable to the plaintiffs is not sufficient to show that the alternative forum is inadequate.[57]  However, the alternative forum has been ruled inadequate "where the alternative forum does not permit litigation of the subject matter of the dispute,"[58] and where "a statute of

---

[53]    *Id.* at 238.

[54]    *Iragorri*, 274 F.3d at 73.

[55]    *See Norex Petroleum*, 416 F.3d at 157.

[56]    *Piper Aircraft*, 454 U.S. at 255 n.22.

[57]    *See id.* at 247.

[58]    *Id.*

14

limitations bars the bringing of a case in a foreign forum that would be timely in the United States."[59]

### 3.    Balancing Public and Private Factors

The private interests that courts must consider relate to the relative convenience to the litigants of the alternative fora.[60]  These factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling [witnesses], and the cost of obtaining attendance of willing[] witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."[61]  In undertaking this analysis, courts should examine the specifics of the claims: "[r]ather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried."[62]  However, courts need not undertake to identify all "the rights, remedies, and procedures available under the law that would be applied in each forum."[63]  "Public interest factors include: court

---

[59]    *Norex Petroleum,* 416 F.3d at 159.

[60]    *See Iragorri*, 274 F.3d at 73.

[61]    *Id.* at 73-74 (quoting *Gulf Oil Corp.*, 330 U.S. at 508).

[62]    *Id.* at 74.

[63]    *Piper Aircraft*, 454 U.S. at 252.

15

congestion; the interest of forums in having local disputes decided at home; and,

the interest in having issues of law decided by courts of the nation whose law is

involved."[64]

## IV.    DISCUSSION

### A.    Statute of Limitations

Citibank asserts, and Omollo apparently concedes, that the statute of

limitations that would apply under South African law has lapsed.[65]  Omollo asserts

that South African law permits equitable tolling of the statute of limitations where

the defendant has misled the plaintiff into allowing the claim to lapse.  Normally it

would be Omollo's burden to prove that South African law permits equitable

tolling.  However, because Omollo is proceeding *pro se* and because this case

presents complex legal issues, the Court asked Citibank to investigate whether

Omollo would be able to file this action in South Africa.  Citibank has not given a

satisfactory answer.  I therefore assume for purposes of this motion that South

African law permits equitable tolling in a manner similar to that of New York.

---

[64]      *Carey*, 370 F.3d at 237.

[65]      *See* Defendant's Memorandum of Law in Support of Motion to
Dismiss at 8 ("Plaintiff's claim is similarly barred [by] the relevant South African
statute of limitations period because claims for fraudulent inducement into a
contract under South African law must be initiated within three years from the date
the alleged damages were discovered.").

Omollo has pled facts that, if true, would entitle him to equitable tolling.[66] As per Omollo's version of events, he was told by Citibank that it was prepared to resolve his claims on September 6, 2005, within three years of the events at issue. Omollo then filed this action within a reasonable period of time after it became evident that no resolution was forthcoming. Based on the possibility of equitable tolling in South Africa, Citibank's motion to dismiss for failure to file within the statute of limitations is denied.

**B.    *Forum Non Conveniens***

Omollo's choice of forum is not entitled to the significant level of deference afforded to residents of this forum. Further, while there is no evidence of a "desire to impose tactical disadvantage" on Citibank, Omollo nonetheless had no reasonable expectation that litigation arising from his employment contract would be conducted in this forum.[67]

The second step of the *forum non conveniens* analysis is the determination of whether there is an adequate alternative forum. Clearly South

---

[66]    In New York, a "defendant may be estopped from asserting the Statute of Limitations as a defense where he or she has wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct." *Zoe G. v. Frederick F.G.*, 617 N.Y.S.2d 370 (2d Dep't 1994).

[67]    *Iragorri,* 274 F.3d at 73.

17

Africa is the potential alternative forum. If this action were barred by the statute

of limitations in South Africa, there would be no adequate alternative. However,

because I have assumed for purposes of this motion that equitable tolling is

available under South African law, South Africa is available as an alternative

forum.

   With the first two steps in the *forum non conveniens* analysis

weighing in favor of defendant, dismissal rests on the balancing of certain public

and private factors. Relevant evidence, including witnesses, is more easily

accessible in South Africa. South Africa has a strong interest in the resolution of

South African legal claims in its own courts. Omollo is a resident of South Africa,

and the events in question and the injury occurred there. Indeed, the only

connection to this forum – that defendant's corporate headquarters is located here

– is relatively inconsequential in terms of its impact on the litigation. The balance

is strongly in favor of dismissal. Therefore, Citibank's motion to dismiss on the

ground of *forum non conveniens* is granted.[68]

---

  [68] Had I found that equitable tolling was not available in South Africa,
Omollo's claims would have been dismissed for failure to file within the statute of
limitations. Regardless of the outcome, Omollo cannot proceed in this Court. If
South Africa is unavailable, then the statute has lapsed and the Court must grant
defendant's motion to dismiss on the statute of limitation ground. If South Africa
is available, then this is an improper forum and the Court must grant defendant's
motion to dismiss on the *forum non conveniens* ground.

## V.    CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted.  While I am sympathetic to plaintiff's plight, the proper forum for this litigation is South Africa, not New York.  The Clerk of the Court is directed to close this motion (document no. 17 on the docket sheet) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          May 6, 2008

## - Appearances -

**Plaintiff (Pro Se):**

John Ojwang' Omollo
60 Polo Fields, 2196
Morningside
Johannesburg
South Africa

**For Defendant:**

Kevin Bruce Leblang, Esq.
Rachel Mara Manne, Esq.
Kramer Levin Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9306